MARS REALTY CORPORATION and Another, Plaintiffs, *v.* JAMES J. SEXTON and Others, as Commissioners of Taxes of the City of New York, etc., Defendants, and DARWIN R. JAMES and Others, Constituting the Board of Housing of the State of New York, Intervening Defendants.

Supreme Court, Bronx County, October 21, 1931.

*Arnstein & Levine* [*Sidney S. Levine* of counsel], for the plaintiffs.

*Arthur J. W. Hilly, Corporation Counsel,* for the commissioners of taxes of the city of New York, defendants.

*Carl S. Stern,* for the Board of Housing of the State of New York, intervening defendants.

*John J. Bennett, Jr., Attorney-General* [*Walter H. Pollak* of counsel], *amicus curiæ.*

McGeehan, J. The plaintiffs, as taxpayers, commenced this action against the commissioners of taxes of the city of New York to enjoin them from granting exemptions of taxation under Local Law No. 9 enacted by the municipal assembly on June 22, 1927, which provides that buildings and improvements in New York city erected before January 1, 1937, by a limited dividend housing company formed under the State Housing Law (Laws of 1926, chap. 823) in connection with a project or projects authorized by article 2 of the State Housing Law shall not be subject to taxation for local purposes, other than assessments for local improvements, for a period of twenty years after the completion of such buildings or improvements.

By order of this court the Board of Housing of the State of New York have been permitted to intervene and have been made parties defendant. Pursuant to section 68 of the Executive Law the Attorney-General applied for permission to appear at any trial or hearing in this action and an order to that effect has been entered.

The plaintiffs allege that this legislation is unconstitutional. They challenge the laws in their entirety and make specific complaint against the tax exemption features thereof. The complaint fails to state facts showing in what respects they are alleged to be invalid. It appears from the briefs that the plaintiffs contend the legislation violates section 1 of the Fourteenth Amendment of the Constitution of the United States (popularly known as the equal protection clause) and article 3, section 18, of the Constitution of the State of New York, which provides that the Legislature shall not pass a private or local b ll granting to any person, association, firm or corporation an exemption from taxation on real or personal property.

The defendants and the Attorney-General respectively move to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action. They uphold the laws as proper exercises of legislative power and call attention to the historical background as outlined in the message of Governor Smith which transmitted to the Legislature of 1926 a report of the Commission of Housing and Regional Planning for Permanent Housing Relief (Legislative Document No. 66). That message and that report led to the enactment of the State Housing Law. It is entitled: " An Act to promote the public health and safety by providing for the elimination of unsanitary and dangerous housing conditions, to relieve congested areas, and the construction and supervision of dwellings and for the letting of apartments at reasonable rentals."

The legislative finding as contained in the law (§ 2) is: " It is

hereby declared that congested and unsanitary housing conditions which exist in certain areas of the state in low priced dwellings are a menace to the health, safety, morals, welfare and reasonable comfort of the citizens of the state. The correction of these conditions in such areas being now otherwise impossible, it is essential that provision be made for the investment of private funds at low interest rates, *the acquisition at fair prices of adequate parcels of land,* the gradual demolition of existing unsanitary and unsafe housing and *the construction of new housing facilities under public supervision* in accord with proper standards of sanitation and safety and at a cost which will permit monthly rentals which wage earners can afford to pay and not in excess of the rates hereinafter provided."

The Commission's report and the legislative declaration must be given " very great respect " by the courts. (*Levy Leasing Company* v. *Siegel,* 258 U. S. 242, 246.)

Two clauses are italicized by the court for the reason that the plaintiffs argue that the law is designed to eliminate congested and unsanitary housing conditions in the city of New York alone and that while it is in form general, its application is local. There are congested districts in other parts of the State outside the Greater City of New York. The Legislature declared that these conditions exist in certain areas *of the State* and are a menace to the citizens *of the State.*

The defendants, the Board of Housing of the State of New York, are charged with certain duties, among which are the following:

" § 13. Duties of board with respect to projects for providing housing accommodations. Whenever the board shall find that there exist in any locality throughout the state conditions described in section two of this chapter which cannot be remedied through the ordinary operation of private enterprise so as to insure the construction of housing facilities in conformity with reasonable standards of health, sanitation and safety within the maximum rental rates herein prescribed, the board shall select and approve an area or areas within or adjacent to such localities for the construction of buildings by limited dividend corporations formed under this act."

The complaint alleges that among the buildings and projects which the defendants, the commissioners of taxes of New York, have already exempted from taxation for the year 1931, pursuant to the local law, are those erected in blocks 3252 A, B and C of the land map of the county of Bronx, and are near Van Cortlandt Park.

The argument that these projects are not within the purview of the law, not being in an area adjacent to a locality of congested

and unsanitary housing conditions, is not pertinent to the question of constitutionality, which is the only one now to be decided.

In *Hobart* v. *City of Minneapolis* (139 Minn. 368) the board of park commissioners, under the authority of law, condemned for park purposes a tract of land outside of and beyond the city limits and not contiguous to the boundary line thereof. The appellant contended that the land so taken was not " adjacent " within the meaning of the statute. The court said (p. 370): " The word ' adjacent ' used in such statutes as descriptive of what lands may be so added to a municipality is given substantial and broad construction, and is not limited to its primary meaning as defined by the lexicographers."

But the court is not now concerned with a question of statutory construction or with the administration of the law as contemplated by its framers and by those who urged its adoption. Much of the argument of the plaintiffs is devoted to subjects which the court may not consider hereon. The Board of Housing is the agent of the State designated to carry out the law. The purposes of the law are to be noted: (1) To promote the public health and safety; (2) to relieve congested areas; and (3) the construction and supervision of dwellings and the letting of apartments at reasonable rentals.

In the performance of their duties the Board may decide to select an area in a part of the city not fully built up and approve a building project there instead of razing and building anew in an area considered undesirable and may also prescribe the type of building to be erected for the general public welfare. These are purely administrative functions with which the court will at no time interfere unless abuse of power is clearly shown. Not only corrective but constructive means are provided to attain the desired objects. One of the remedies that the Commission found essential for an improvement of the conditions criticized was: " The adoption of a method of providing adequate housing for families of limited income which commercial enterprise cannot serve, applicable not only to the worst tenement areas but as well to *any part* of a city or cities in which the need is manifest." (Legislative Documents, 1926, No. 66, pp. 32, 33.)

The Board has recognized that as being a desirable method and during the past five years upon their approval millions of dollars of private capital have been invested in the development of new areas within the limits of New York city. Because they have done this instead of in the first instance gradually reconstructing " the worst tenement areas in cities " does not appear to be a sufficient

reason for condemning the law in its entirety. They are the ones to say what is for the best interests of the people at large.

As was said in *Green* v. *Frazier* (253 U. S. 233, 240): "Questions of policy are not submitted to judicial determination, and the courts have no general authority or supervision over the exercise of discretion which under our system is reposed in the people or other departments of government."

On these motions the sole considerations are: Is the law a private or local bill granting tax exemption to a certain group and, therefore, violative of the State Constitution, and does it deny the plaintiffs the equal protection of laws guaranteed by the Federal Constitution.

Commenting on the particular article and section of the State Constitution, the Court of Appeals, in *People ex rel. 1170 Fifth Avenue Corporation* v. *Goldfogle* (254 N. Y. 476), said: "That section is aimed primarily if not exclusively at legislation attempting to grant to some specified 'person, association, firm or corporation' an exemption from taxation. It is not intended to prevent in every instance the enactment of laws which the Legislature deems salutary and which apply to all property of the same class in a defined territory."

By its very provisions the law does not benefit any particular group but treats all citizens of the State alike and is State wide in its application.

A limited housing company must be organized to serve a public purpose and shall at all times remain subject to the supervision and control of the State Housing Board (State Housing Law, § 30, subd. 12); the return on its stock and debentures is limited (§ 33); and any surplus, unless too small for the purpose, shall be applied to the reduction of rentals (§ 42). The law affects all of its acts from its formation to its dissolution.

Tax exemptions by the State and the municipality are provided for by sections 39 and 51. It is these sections that the plaintiffs directly attack. A similar challenge was made in the case of *Hermitage Company* v. *Goldfogle* (204 App. Div. 710; affd., 236 N. Y. 554), which sustained the constitutionality of an addition to the Tax Law granting exemptions in certain cases for a limited time. At page 726 (per DOWLING, J.) the court said: "In my opinion, the permitted classification for exemption purposes of new buildings about to be erected and intended for residential purposes, was a reasonable and proper one. This is not a case of an arbitrary classification of existent buildings into separate groups, some of which were taxable, and some of which were not. It was an exemption from future local taxation, for a limited period, of

property which was to be created in return for that concession. It was not a bonus for something which the owner was bound to do, for he was under no obligation to build, nor could he be reasonably expected so to do, in view of the high cost of building operations. It was a bargain between the State and the owner of vacant property, by which each gained something and no one was the loser. The State gained additional housing facilities for its citizens, the owner gained an exemption from local taxes, the locality gained improved real estate subject to taxation when the period of exemption should expire."

In that case the period of exemption was ten years. The State Housing Law is more comprehensive in its purposes than those the Legislature had in mind when it added section 4-b to the Tax Law (Laws of 1920, chap. 949) in connection with the Emergency Laws of September, 1920. Under Local Law No. 9 of the City of New York, 1927, the period of exemption is twenty years, provided the buildings and improvements are " erected, made or created " prior to January 1, 1937 (§ 2). The plaintiffs are only speculating when they say that the exemption thus allowed may be continued in perpetuity.

Applying the test of reasonableness as enunciated in numerous decisions of the appellate courts of this State, there has been no violation of article 3, section 18, of the State Constitution.

Considering the second objection, namely, the alleged invasion of the plaintiffs' rights under section 1 of the Fourteenth Amendment of the Federal Constitution, the United States Supreme Court, in *Lindsley* v. *Natural Carbonic Gas Company* (220 U. S. 61, 78), specified: " The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these:

" 1. The equal protection clause of the Fourteenth Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary.

" 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.

" 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed."

In *Bell's Gap Railroad Company* v. *Pennsylvania* (134 U. S.

232, 237) the court said: " The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. * * * All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the State in framing their Constitution. * * * We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require; which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice; and which every State, in one form or another, deems it expedient to adopt."

These are only two of many authorities of the United States Supreme Court and clearly indicate there has been no infringement upon the Federal Constitution. The law being general in its application cannot be said to be, as the plaintiffs contend, " a hostile discrimination " against particular persons and classes.

The State Housing Law was enacted in the interests of all the people of the State for the purpose of solving a problem that had been made the subject of many investigations. The public health and the family life and morals were affected by abominable conditions that had existed for upwards of half a century and had become intolerable. Housing was found to be a permanent problem. Restrictive measures as preventatives, while in a way beneficial, were inadequate to combat the evils of bad housing. Accordingly, the Housing Law was enacted as a progressive measure. The wisdom of this legislation rests solely with the law-making bodies of the State. Its novelty is no argument against its constitutionality. (*People ex rel. Durham Realty Corporation* v. *La Fetra*, 230 N. Y. 429, 446.) " To be able to find fault with a law is not to demonstrate its invalidity." (*Metropolis Theatre Co.* v. *Chicago*, 228 U. S. 61, 69.)

The constitutionality of the Home Building Act of the State of North Dakota was upheld in *Green* v. *Frazier* (*supra*), in which the court said (at p. 239): " When the constituted authority of the State undertakes to exert the taxing power, and the question of the validity of its action is brought before this court, every pre-

sumption in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action."

The plaintiffs have failed to state sufficient facts to entitle them to any judgment in this action.

The motions to dismiss the complaint are granted, with costs. Orders signed.