In the Matter of the Application of the NEW YORK CITY HOUSING AUTHORITY, etc., Petitioner, Plaintiff, against ANDREW MULLER and Others, Defendants.

Supreme Court, New York County, April 11, 1935.

*Charles Abrams*, for the plaintiff.

*Tally & Lamb*, for the defendants Muller.

*Ira S. Robbins*, counsel for New York State Board of Housing, *amicus curiæ*.

McLAUGHLIN, J. The defendant Andrew Muller moves to dismiss the condemnation proceeding started by the New York City Housing Authority. This he does by opposing the petitioner's application for the appointment of commissioners of appraisal. He urges only unconstitutionality, and while he has divided his brief into five points, they are really but two: (1) That the act allows a taking of private property for a private use, and (2) that the act is class legislation. The right of eminent domain is a remnant of the ancient law of feudal tenure. In course of time the power to revoke the grants of lands was whittled away. The people still own the land with a power to take it back upon payment of just compensation if the taking back is for the use of the people. The entire question before me is, therefore, whether this taking is for the use of the people. The two points, (1) is this a taking of private prop-

erty for a private use, and (2) is it legislation for a class, are but one point. The people cannot, as long as the Constitutions of the State of New York and of the United States remain in their present form, take private property for use of other than the people, even if they pay just compensation. The case is very simple when the people take land to be used directly for governmental purposes. It becomes more complicated when the use is composite, i. e., partly by the people and partly by individuals for the benefit of the people. If we laid down the rule that all the people must be allowed to use the land without any discrimination as to their ability to pay we would at once prevent all condemnation by public service corporations. It has been held " the inadequacy of use by the general public as a universal test is established." (*Mt. Vernon-Woodberry Cotton Duck Co.* v. *Alabama Interstate Power Co.*, 240 U. S. 30.) That must be so, for in few of the cases where condemnation has been allowed, has there been any opportunity or right of one hundred per cent of the people to the unrestricted use of the land. Is it unconstitutional to use land condemned for a park as a public golf course because only 500 persons out of the entire State population can use the course on any one day, and because for any five minutes not more than four can use any one tee? Is it unconstitutional to condemn land for a hospital for the indigent because the millionaire will not be accommodated at all or only for pay? Is that taking private property for a private use when it is taken for the use of the poor? The defendant says his land cannot be taken by the people because instead of housing sick on it, it will house the well to prevent them from becoming sick. Such an argument is not sufficient to have the court declare this law unconstitutional. Nobody may question the statement that proper housing is not only a beneficent public act, but it is clear that it may not be left entirely to private enterprise. In the opinion of the Legislature this agency has failed to remedy the unsanitary and sub-standard conditions in housing that exist in some of our dwelling sections. The exercise of its police power by the State in the form of regulatory statutes has also been a failure in great part. It is true that these restrictive measures have been somewhat beneficial, but history and experience have shown that they were inadequate as a cure or to combat successfully the evils of the conditions they sought to remedy. Something constructive was essential. For that purpose the Legislature has passed this law (Municipal Housing Authorities Law [Laws of 1934, chap. 4]). Great respect must be shown the deliberate finding of the Legislature of this State as to the conditions and the necessary remedy, particularly where all other remedies have failed. The need for this legislation is present. It

may not be questioned that the proper housing contemplated by this law will be a boon to the citizens of this State. It is difficult to conceive of a law the purposes of which are more for the public good than the one under discussion. Similar legislation has been before our courts and they have invariably upheld the constitutionality of such legislation. (*People ex rel. Durham Realty Corp.* v. *LaFetra*, 230 N. Y. 429, 446; *The Hermitage* v. *Goldfogle*, 204 App. Div. 710; affd., 236 N. Y. 554; *Mars Realty Corp.* v. *Sexton*, 141 Misc. 622.) The courts of other States and the United States Supreme Court have decided kindred questions in the same manner. (*Strickley* v. *Highland Boy Gold Mining Co.*, 200 U. S. 527; *Mt. Vernon-Woodberry Cotton Duck Co.* v. *Alabama Interstate Power*, 240 id. 30; *Clark* v. *Nash*, 198 id. 361; *Roe* v. *Kansas*, 278 id. 191; *New Orleans Land Co.* v. *Board of Levee Commissioners*, 171 La. 718; 132 So. 121; affd., without opinion, 283 U. S. 809; *Butte, A. & P. Ry.* v. *Montana U. Ry. Co.*, 16 Mont. 504; 41 P. 232; *Turnpike Co.* v. *News Co.*, 43 N. J. L. 381; *State ex rel. Twin City Building & Investment Co.* v. *Houghton*, 144 Minn. 1; 176 N. W. 159.)

The court cannot accept as controlling the case of *United States* v. *Certain Lands in City of Louisville* (9 Fed. Supp. 137 [Dist. Ct. W. D. Ky.]), if good law can readily be distinguished. The land there taken was not that of the sovereign who sought to condemn it. The sovereign there was the people of Kentucky. The United States was not exercising its feudal right. It was in effect an individual taking of private property for its individual purpose. That the use would be of benefit to the residents of Kentucky was (if the United States is taking as a private person) beside the mark. That was for Kentucky to decide. By this I do not mean to intimate that I take the ultra-conservative view of the Kentucky court. I think rather that the government was exercising its right to condemn land for interstate uses. Even the Kentucky court recognizes that " there must be a use, or right of use, by the public, *or some limited portion of the public*," adopting the view of the court in *Arnsperger* v. *Crawford* (101 Md. 247; 61 A. 413). That the land covered by this petition is to be used by a limited portion of the public is without question. The court holds nevertheless that the use here is a public use, *i. e.*, to abolish disease-breeding slums for the benefit of all the people of the State, and to furnish " a limited portion of the public " (readily ascertainable) living quarters which will prevent disease. The people of the State of New York have the right to take back their land for such a purpose. The motion to appoint commissioners is granted.