*79 MEMORANDUM
LETTS, J.
The United States seeks to condemn certain lands within the District of Columbia for the construction of a low-cost housing and slum-clearance project under the provisions of Title 2 of the National Industrial Recovery Act (48 Stat. 195). As shown by the petition the action is brought at the request of the Federal Emergency Administrator of Public Works who has prepared a program of public works which includes the construction of a low-cost housing and slum-clearance project in the city of Washington, District of Columbia, known as the War College Housing Project. The administrator has found it necessary and advantageous to acquire an estate in fee-simple in the lands sought to be condemned for the purpose of the project. Upon such lands the adminstrator proposes to construct the project in question and says the lands are needed for a public use and purpose.
Several of the defendants whose lands are sought to be condemned in this action have demurred to the petition. The primary contention upon which these demurrers rest is that the United States is without constitutional power to acquire through condemnation, property of citizens for the purpose and use for which the properties here involved are to be put.
Section 201 (a) of Title 2 of the National Industrial Recovery Act authorizes the President to create a Federal Emergency Administration of Public Works and to appoint a Federal Emergency Administrator. Section 202 authorizes the Administrator to prepare a comprehensive program of public works to include, among other things, “construction, reconstruction, alteration, or repair, under public regulation or control of low-cost housing and slum-clearancé projects.” Section 203 (a) authorizes the President, through the Administrator or through such other agencies *80 as he may designate, to acquire, by the exercise of the power of eminent domain, any real or personal property in connection with the construction of any low-cost housing or slum-clearance project, and to sell any property so acquired, or to lease such property, with or without the privilege of purchase. Section 220 authorizes an appropriation of $3,300,000,000 to carry out the purposes of the act. By the Fourth Deficiency Act passed the same day (48 Stat. 274) Congress appropriated the $3,300,000,000 to carry into effect the provisions of the Act.
There is nothing in the National Industrial Recovery Act, under which the United States is proceeding, to serve as a guide to the President in exercising the powers conferred upon him; there is no requirement that he or the administrator make findings of fact; there is no definition of the word “slum” or of the term “low-cost housing” nor of the term “slum-clearance.” There is nothing in the law to indicate where these projects shall be established nor are any standards fixed by which the administrator is to determine where they will be established. There is no requirement nor limitation imposed upon the administrator to control the expenditure of the money appropriated for this and similar projects. The President is empowered to administer the law through his administrator without congressional direction and without the aid of congressional standards. The property owners in support of their demurrers contend that this unlimited power so reposed in the President and his administrator is an illegal delegation of legislative authority. Panama Refining Company v. Ryan, 293 U. S. 288, and Schechter Poultry Company v. United States, 295 U. S. 495, are cited in support of this contention.
As to the power of the Government to condemn lands for the purpose indicated by the Act it is axiomatic that the United States is a government of delegated powers. There is no provision in the Constitution which authorizes *81 it to exercise the power of eminent domain. It possesses the power as an attribute of sovereignty. Kohl v. United States, 91 U. S. 367; Shoemaker v. United States, 147 U. S. 282; Chappell v. United States, 160 U. S. 499. It is firmly established in the cases that the right of eminent domain can only be exercised where the property is taken by the United States for a public use.
The trial court in the case, United States v. Certain Lands, 9 F. Supp. 137, and the Circuit Court of Appeals for the Sixth Circuit in reviewing the case came to the conclusion that the use indicated in the National Industrial Recovery Act is not a public use. The Supreme Court has never attempted to define the term “public use.” It seems clear that a use to be public need not benefit all residents of a community. Universal benefit is not the test. The inquiry seems to be whether or not the use is necessary to a legitimate and proper function of government, or whether the advantage is open to the enjoyment of the general public. The authorities seem to lead to the conclusion that the power of eminent domain can be exercised only for a public use, meaning a use by the government for a legitimate governmental purpose, or a use for the benefit or enjoyment of the public. An examination of the National Industrial Recovery Act discloses the use for which this property is sought to be condemned. That use is not a public- use in the sense that the property is to be used by the government in the performance of any function of government. The lands are not to be occupied by any agency of the government in performing governmental functions. When the project is completed it is proposed to use the lands with the structures placed thereon for the purpose of sale or lease to a few citizens for occupancy as homes. When the lands are taken and the projects are constructed they will have no relation to the conduct of government business nor will they be open for the advan *82 tage or enjoyment of the general public. They will in fact be sold or leased in competition with individual owners of real estate in the community. I conclude that the purpose is not a public use.
The government contends that the power is possessed by the United States since Congress is the sole legislative authority for the District of Columbia and that this question should be determined in the light of the exceptions to the general rule which arise in cases under the power of eminent domain of which the states are possessed. In Rindge v. County of Los Angeles, 262 U. S. 700, the Supreme Court indicates that the question in the last analysis is not a legislative one but a judicial one. It is true that the Supreme Court in considering cases arising in the states has in several cases stated that it will view with great respect the determination of the legislature of a state and the affirming opinion of the highest court of such state, as to what is, or what is not a public use and will not interfere with such determination of the question if there is any basis for it. This view of the matter is taken upon the ground that such agencies of the people are better situated to know local conditions. The cases of Green v. Frazier, 253 U. S. 233, and Jones v. City of Portland, 245 U. S. 217, are typical of this class of cases and are definitely relied upon by counsel for the United States to support its position. Such cases are not authoritative of the proposition that the United States may take private property under authority of acts of Congress for other than public uses. In Green v. Frazier, supra, the Supreme Court reiterated the attitude of the court toward state legislation and repeated what had been said before, “that what was or was not a public use was a question concerning which local authority, legislative and judicial, had a special means of securing information to enable them to form a judgment, and particularly that the judgment of the highest court of the state, *83 declaring a given nse to be public in its nature, would be accepted by this court unless clearly unfounded.” Tbe court further said, “if the state sees fit to enter upon such enterprises as are here involved with the sanction of its Constitution, its legislature, and its peoples, we are not prepared to say that it is within the authority of this court, in enforcing the observance of the 14th Amendment to set aside such action by judicial decision.” Further the court said, “With the wisdom of such legislation, and the soundness of the economic policy involved, we are not concerned. Whether it will result in ultimate good or harm is not within our province to inquire.”
For guidance we look to the National Industrial Recovery Act to determine the congressional purpose. It does not indicate that in the passage of the Act Congress took any particular note of conditions peculiar to this community. There is nothing in the Act to show that Congress acted upon information respecting local needs. It seems clear that Congress enacted the statute to meet the exigencies of a nation-wide economic condition. Unlike the act of a state legislature acting upon information respecting a community it is general in its scope and in its application. Since it does not appear that Congress undertook to legislate for the District of Columbia upon information respecting the local situation I conceive the question to be a judicial one. The courts must say whether or not these lands are sought to be condemned for a public use.
The exception to the general rule which is found in Green v. Frazier, supra, and Jones v. City of Portland, supra, and similar cases is permitted only when the enterprise is with the sanction of the state constitution. It would seem that the limitations of the Federal Constitution and of the Common Law power of eminent domain are general in their application and may not be waived in cases affecting the District of Columbia only. In the District *84 of Columbia as elsewhere in the realm of the nation the government has power to condemn private property for a public use only.
This case involves the power of eminent domain only. It is argued that Congress being the sole legislative authority for the District of Columbia is possessed of the police power for the District of Columbia which elsewhere rests in the states. It is recognized that Congress has such power but it is not seen that Congress undertook to exercise the power in the enactment of the National Industrial Recovery Act: It is argued by counsel for the government that even if the United States has not the power to condemn private property for a low-cost housing and slum-clearance project by virtue of the powers of eminent domain, the government nevertheless, has the right to take these privately owned properties for such purpose by virtue of its police power over the District of Columbia. The police power is a power to regulate and control and is not a power to take private property. It is a power quite apart from the right of eminent domain. Block v. Hirsch, 256 U. S. 135. The right of a government to take private property for a public use rests upon a right inherent in government. The power to regulate and control the use of private property arises from the police power. Madisonville Traction v. Mining Co., 196 U. S. 239. The mere fact that the government, national or state, provides compensation for the taking of private property does not justify such taking save and except that the use for which the property is taken is a public one.
Congress had undertaken a program, national in its scope, not peculiar to the District of Columbia in any sense. The program had no specific reference to conditions in the District of Columbia. The right to exercise the power of eminent domain is set out in Section 203 of the Act. It provides as follows: (a) “With a view to increas *85 ing employment quickly (while reasonably securing any loans made by the United States) the President is authorized and empowered, through the Administrator or through such other agencies as he may designate or create, . . . (3) to acquire by purchase, or by exercise of the power of eminent domain, any real or personal property in connection with the construction of any such project, and to sell any security acquired or to lease any such property with or without the privilege of purchase; ...” It is plain that the object of Congress was to increase employment quickly. For this it legislated. It provided for the taking of private property through the right of eminent domain for use in the erection of low-cost houses to be rented or sold. It was an incident of the program to relieve unemployment. Counsel for the United States place reliance on the ease of New York City Housing Authority v. Miller, 279 N. Y. Supp. 299. It may be noted that the Legislature of the State of New York in its declaration of policy and purpose has stated that the police power had failed. Congress has made no such declaration with respect to the District of Columbia. This court may not assume that Congress in the exercise of its police power is unable to control and correct local conditions.
I have concluded that the use for which these lands are sought to be condemned is not a public use; that Congress did not attempt to legislate for the District of Columbia, having in mind local conditions; that Congress did not establish a public policy based on information respecting conditions local to the District of Columbia; that Congress did not legislate in the exercise of its police power over the District of Columbia; that the United States is without constitutional authority to condemn these privately owned lands for the use and purpose indicated; accordingly the several demurers are sustained.
Formal orders necessary to the record may be presented.