In the Matter of THE NEW YORK CITY HOUSING AUTHORITY, Respondent, against ANDREW MULLER et al., Appellants, Impleaded with Others.

(Argued January 30, 1936; decided March 17, 1936.)

334

*Charles Lamb* and *James A. Mc Kaigney* for appellants. The State Housing Law (L. 1926, ch. 823) and the amendments thereof contravene and violate the Constitutions of the United States and of the State of New York. (*United. States* v. *Certain Lands in City of Louisville, Ky.*, 78 Fed. Rep. [2d] 684; *People* v. *Adirondack Ry. Co.*, 160 N. Y. 225; *Matter of Tuthill*, 163 N. Y. 133; *Coster* v. *Tidewater Co.*, 18 N. J. L. 54; *Matter of Deansville Cemetery Assn.*, 66 N. Y. 569; *Opinion of Justices*, 211 Mass. 624; *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371; *Matter of Rochester & G. H. R. R. Co.*, 12 N. Y. Supp. 566; 128 N. Y. 611; *Brevoort* v. *Grace*, 53 N. Y. 245; *Board of Black River Regulating District* v. *Ogsbury*, 203 App. Div. 43; *Matter of Eureka Basin Warehouse & Mfg. Co.*, 96 N. Y. 42; *Renssèlaer & Saratoga R. R. Co.* v. *Davis*, 43 N. Y. 137; *Matter of Split Rock Cable Co.*, 128 N. Y. 408.) The removal of the type of houses and slums described in the Municipal Housing Authorities Law (L. 1934, ch. 4) may be accomplished by virtue of the police power. (*Tenement House Dept.* v. *Moeschen*, 179 N. Y. 325.)

*Paul Windels, Corporation Counsel* (*Paxton Blair* of counsel), for respondent. The use to which the condemned lands are to be put is a public use. (*New York Trust Co.* v. *Eisner*, 256 U. S. 345; *People* v. *Schweinler*

Press, 214 N. Y. 395; 242 U. S. 618; *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112; *Clark* v. *Nash*, 198 U. S. 361; *Rindge Co.* v. *Los Angeles County*, 262 U. S. 700; *Pocantico Water Works* v. *Bird*, 130 N. Y. 249; *Matter of Bloomfield & Rochester Natural Gas Light Co.* v. *Richardson*, 63 Barb. 437; *Matter of Town of Whitestown*, 24 Misc. Rep. 150; *O'Reiley* v. *Kankakee Valley Draining Co.*, 32 Ind. 169; *Talbot* v. *Hudson*, 16 Gray, 417; *Adler* v. *Deegan*, 251 N. Y. 467; *State ex rel. Porterie* v. *Walmsley*, 183 La. 139.) The clearance of slums and the erection of sanitary tenements in their place are undertakings well within the police powers of the State. (*People ex rel. Durham Realty Co.* v. *La Fetra*, 230 N. Y. 429; *People* v. *Nebbia*, 262 N. Y. 259; 291 U. S. 502; *Green* v. *Frazier*, 44 N. D. 395; 253 U. S. 233; *Lochner* v. *New York*, 198 U. S. 45; *Willmon* v. *Powell*, 91 Cal. App. 1; *Matter of Mount Hope Development Corp.* v. *James*, 258 N. Y. 510; *Roche* v. *Sexton*, 268 N. Y. 594.)

*Ira S. Robbins* for New York State Board of Housing, *amicus curiæ*. The clearance of slum areas and the providing of decent, safe and sanitary dwelling accommodations for persons of low income, pursuant to the provisions of the Municipal Housing Authorities Law, are public uses, within the provisions of section 6 of article I of the Constitution of the State of New York. (*Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112; *Strickley* v. *Highland Boy Gold Mining Co.*, 200 U. S. 527; *Clark* v. *Nash*, 198 U. S. 361; *Olmstead* v. *Camp*, 33 Conn. 532; *Mt. Vernon-Woodbery Cotton Duck Co.* v. *Alabama Interstate Power Co.*, 240 U. S. 30; *Rindge Co.* v. *County of Los Angeles*, 262 U. S. 700; *Matter of New York*, 135 N. Y. 253; *Moore* v. *Sanford*, 151 Mass. 285; *Matter of Tuthill*, 36 App. Div. 492; 163 N. Y. 133; *State ex rel. Twin City Building & Investment Co.* v. *Houghton*, 144 Minn. 1; *Paxton Canal Co.* v. *Farmers Irrigation Co.*, 45 Neb. 884; *Hairston* v. *Danville & Western Ry. Co.*, 208 U. S. 598; *Hagar* v. *Reclamation District*, 111 U. S. 701;

*Houck* v. *Little River Drainage District*, 239 U. S. 254; *O' Neill* v. *Leamer*, 239 U. S. 244; *New Orleans Land Co.* v. *Board of Levee Commissioners*, 132 So. Rep. 120; 283 U. S. 809; *State ex rel. Madson* v. *Houghton*, 233 N. W. Rep. 931; *Kansas City* v. *Liebi*, 252 S. W. Rep. 404; *Matter of Mayor*, 28 App. Div. 143; 157 N. Y. 409; *Dingley* v. *City of Boston*, 100 Mass. 544; *Sweet* v. *Rechel*, 159 U. S. 380; *Matter of Cooper*, 28 Hun, 515; 93 N. Y. 507; *Pocantico Water Works* v. *Bird*, 130 N. Y. 249; *Board of Education* v. *Harper*, 191 N. Y. Supp. 273; *Rensselaer & Saratoga R. R. Co.* v. *Davis*, 43 N. Y. 137; *Stannards Corners Rural Cemetery Assn.* v. *Brandes*, 14 Misc. Rep. 270; *Matter of Lyons Cemetery Assn.*, 93 App. Div. 19; *Matter of Cheesebrough*, 78 N. Y. 232; *Matter of Ryers*, 72 N. Y. 1; *Board of Black River Regulating District* v. *Ogsbury*, 203 App. Div. 43; 235 N. Y. 600; *Board of Hudson River Regulating District* v. *Fonda, J. & G. R. R. Co.*, 223 App. Div. 358; *Matter of Burns*, 155 N. Y. 23; *Adler* v. *Deegan*, 251 N. Y. 467; *Green* v. *Frazier*, 44 N. D. 395; 253 U. S. 233; *Willmon* v. *Powell*, 91 Cal. App. 1; *Simon* v. *O'Toole*, 108 N. J. L. 32, 549.) The exercise of the power of eminent domain, pursuant to the provisions of the Municipal Housing Authorities Law, is not in violation of the provisions of section 1 of the Fourteenth Amendment to the Constitution of the United States. (*Clark* v. *Nash*, 198 U. S. 361; *Green* v. *Frazier*, 253 U. S. 233; *Strickley* v. *Highland Boy Gold Mining Co.*, 200 U. S. 527; *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112; *Jones* v. *City of Portland*, 245 U. S. 217; *Block* v. *Hirsh*, 256 U. S. 135; *Hairston* v. *D. & W. R. R. Co.*, 208 U. S. 598.)

*Charles Abrams, amicus curiæ.* Laws providing for public housing are constitutional. (*Mars Realty Corp.* v. *Sexton*, 141 Misc. Rep. 622; *Matter of Mt. Hope Development Corp.* v. *James*, 258 N. Y. 510; *Lowell* v. *Boston*, 111 Mass. 454; *Green* v. *Frazier*, 253 U. S. 233; *Willmon* v. *Powell*, 91 Cal. App. 1; *Wheelon* v. *S. D. Land Settlement*

*Board,* 181 N. W. Rep. 359.) Slum clearance and low-cost housing are public uses. (*People ex rel. Hawthorn* v. *Prendergast,* 248 N. Y. 215; *Talbot* v. *Hudson,* 16 Gray, 417; *Long Sault Development Co.* v. *Kennedy,* 143 N. Y. Supp. 454; *Matter of Niagara Falls & Whirlpool R. R. Co.,* 108 N. Y. 375; *Weismer* v. *Village of Douglas,* 64 N. Y. 91; *Matter of Tuthill,* 36 App. Div. 492; 163 N. Y. 133; *Matter of Ryers,* 72 N. Y. 1; *Hellinger* v. *City of New York,* 168 N. Y. Supp. 271; *Board of Black River Regulating District* v. *Ogsbury,* 196 N. Y. Supp. 281; *Pocantico Waterworks Co.* v. *Bird,* 130 N. Y. 249; *Matter of New York,* 63 Hun, 632; 135 N. Y. 253; *People* v. *Adirondack R. R. Co.,* 160 N. Y. 225; 176 U. S. 335; *Matter of City of Rochester* v. *Holden,* 224 N. Y. 386; *Matter of Niagara, L. & O. Power Co.,* 111 App. Div. 686; *Mt. Vernon-Woodberry Cotton Duck Co.* v. *Alabama Interstate Power Co.,* 240 U. S. 30; *Rindge Co.* v. *County of Los Angeles,* 262 U. S. 700; *Strickley* v. *Highland Boy Gold Mining Co.,* 200 U. S. 527.)

CROUCH, J. The petitioner, a public corporation organized under the Municipal Housing Authorities Law (Laws of 1934, ch. 4, comprising §§ 60 to 78, inclusive, of the State Housing Law, being Laws of 1926, ch. 823), seeks to condemn certain premises in the city of New York owned by the defendant Andrew Muller. The public use for which the premises are required is stated in the petition to be " the clearance, replanning and reconstruction of part of an area of the City of New York, State of New York wherein there exist, and the petitioner has found to exist, unsanitary and substandard housing conditions."

As part of its project the petitioner has acquired by purchase properties contiguous on both sides to the premises in question. Acquisition of the defendant's property is, therefore, necessary for the carrying out of the project. The premises consist of two old-law tenement

houses. The owner resists condemnation upon the ground that the Municipal Housing Authorities Law violates article I, section 6, of the State Constitution and the Fourteenth Amendment of the Federal Constitution, because it grants to petitioner the power of eminent domain for a use which is not a public use.

Briefly and broadly stated, the statute provides that a city may set up an authority with power to investigate and study living and housing conditions in the city, and to plan and carry out projects for the clearing, replanning and reconstruction of slum areas and the providing of housing accommodations for persons of low income. It is empowered under certain limitations to issue and sell bonds which, however, shall not be a debt of the State or of the city; and it may not in any manner pledge the credit of the State or city or impose upon either any obligation. It is granted the power of eminent domain, to be exercised as provided, and it is exempted from the payment of certain taxes and fees. In enacting the statute, the Legislature, after thorough investigation, made certain findings of fact, upon the basis of which it determined and declared the necessity in the public interest of the provisions enacted and that the objects thereof were " public uses and purposes for which public money may be spent and private property acquired." (§ 61.) The facts found were that " in certain areas of cities of the state there exist unsanitary or substandard housing conditions owing to over-crowding and concentration of population, improper planning, excessive land coverage, lack of proper light, air and space, unsanitary design and arrangment, or lack of proper sanitary facilities; that there is not an adequate supply of decent, safe, and sanitary dwelling accommodations for persons of low income; that these conditions cause an increase and spread of disease and crime and constitute a menace to the health, safety, morals, welfare, and comfort of the citizens of the state, and impair economic values; that these con-

ditions cannot be remedied by the ordinary operation of private enterprise."

It is true that the legislative findings and the determination of public use are not conclusive on the courts. (*Pocantico Water Works Co.* v. *Bird,* 130 N. Y. 249.) But they are entitled at least to great respect, since they relate to public conditions concerning which the Legislature both by necessity and duty must have known. (*Block* v. *Hirsh,* 256 U. S. 135; *People* v. *Schweinler Press,* 214 N. Y. 395.) The existence of all the conditions adverted to by the Legislature was alleged in the petition and proved with reference to the area included in the project, of which the premises in question are a part. The public evils, social and economic of such conditions, are unquestioned and unquestionable. Slum areas are the breeding places of disease which take toll not only from denizens, but, by spread, from the inhabitants of the entire city and State. Juvenile delinquency, crime and immorality are there born, find protection and flourish. Enormous economic loss results directly from the necessary expenditure of public funds to maintain health and hospital services for afflicted slum dwellers and to war against crime and immorality. Indirectly there is an equally heavy capital loss and a diminishing return in taxes because of the areas blighted by the existence of the slums. Concededly, these are matters of State concern (*Adler* v. *Deegan,* 251 N. Y. 467, 477), since they vitally affect the health, safety and welfare of the public. Time and again, in familiar cases needing no citation, the use by the Legislature of the power of taxation and of the police power in dealing with the evils of the slums, has been upheld by the courts. Now, in continuation of a battle, which if not entirely lost, is far from won, the Legislature has resorted to the last of the trinity of sovereign powers by giving to a city agency the power of eminent domain. We are called upon to say whether under the facts of this case, including the cir-

cumstances of time and place, the use of the power is a use for the public benefit — a public use — within the law.

There is no case in this jurisdiction or elsewhere directly in point. Governmental housing projects constitute a comparatively new means of remedying an ancient evil. Phases of the general subject were before the courts in *Green* v. *Frazier* (44 N. D. 395; affd., 253 U. S. 233) and in *Willmon* v. *Powell* (91 Cal. App. 1), where the power to spend public funds for such projects was upheld. (See, also, *Simon* v. *O'Toole*, 108 N. J. L. 32; affd., 108 N. J. L. 549.) In *United States* v. *Certain Lands in Louisville* (78 Fed. Rep. [2d] 684) it was held that while such a project might be within the scope of a State's activities, it was not one which the Federal government had power to undertake. The cases in this State, which, perhaps, afford the closest analogy are the drainage cases, where land was permitted to be taken by eminent domain in the interest of public health, even where there was incidental benefit to private interests. (See *e. g.*, *Matter of Ryers*, 72 N. Y. 1; *Board of Black River Regulating District* v. *Ogsbury*, 203 App. Div. 43; affd.; 235 N. Y. 600.) "To take," said the court, "for the maintenance and promotion of the public health, is a public purpose." (*Matter of Ryers*, *supra*, p. 7.) Over many years and in a multitude of cases the courts have vainly attempted to define comprehensively the concept of a public use and to formulate a universal test. They have found here as elsewhere that to formulate anything ultimate, even though it were possible, would, in an inevitably changing world, be unwise if not futile. Lacking a controlling precedent, we deal with the question as it presents itself on the facts at the present point of time. "The law of each age is ultimately what that age thinks should be the law." (*People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429, 450.)

The fundamental purpose of government is to protect the health, safety and general welfare of the public. All

its complicated activities have that simple end in view. Its power plant for the purpose consists of the power of taxation, the police power and the power of eminent domain. Whenever there arises, in the State, a condition of affairs holding a substantial menace to the public health, safety or general welfare, it becomes the duty of the government to apply whatever power is necessary and appropriate to check it. There are differences in the nature and characteristics of the powers, though distinction between them is often fine. (*People ex rel. Durham R. Corp.* v. *La Fetra, supra,* p. 444.) But if the menace is serious enough to the public to warrant public action and the power applied is reasonably and fairly calculated to check it, and bears a reasonable relation to the evil, it seems to be constitutionally immaterial whether one or another of the sovereign powers is employed.

The menace of the slums in New York city has been long recognized as serious enough to warrant public action. The Session Laws for nearly seventy years past are sprinkled with acts applying the taxing power and the police power in attempts to cure or check it. The slums still stand. The menace still exists. What objections, then, can be urged to the application of the third power, least drastic, but as here embodied probably the most effective of all?

It is said that private enterprise, curbed by restrictive legislation under the police power, is adequate and alone appropriate. There is some authority to that effect in other States. A sufficient answer should be the page of legislative history in this State and its result referred to above. Legislation merely restrictive in its nature has failed because the evil inheres not so much in this or that individual structure as in the character of a whole neighborhood of dilapidated and unsanitary structures. To eliminate the inherent evil and to provide housing facilities at low cost — the two things necessarily go together —

require large scale operations which can be carried out only where there is power to deal *in invitum* with the occasional greedy owner seeking excessive profit by holding out. The cure is to be wrought, not through the regulated ownership of the individual, but through the ownership and operation by or under the direct control of the public itself. Nor is there anything novel in that. The modern city functions in the public interest as proprietor and operator of many activities formerly and in some instances still carried on by private enterprise.

It is also said that since the taking is to provide apartments to be rented to a class designated as " persons of low income," or to be leased or sold to limited dividend corporations, the use is private and not public. This objection disregards the primary purpose of the legislation. Use of a proposed structure, facility or service by everybody and anybody is one of the abandoned universal tests of a public use. (*Mt. Vernon-Woodberry Cotton Duck Co.* v. *Alabama Interstate Power Co.*, 240 U. S. 30, 32; *Strickley* v. *Highland Boy Gold Mining Co.*, 200 U. S. 527; *Rindge Co.* v. *County of Los Angeles*, 262 U. S. 700; *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, 161, 162.) The designated class to whom incidental benefits will come are persons with an income under $2,500 a year, and it consists of two-thirds of the city's population. But the essential purpose of the legislation is not to benefit that class or any class; it is to protect and safeguard the entire public from the menace of the slums. The so-called limited dividend corporations referred to were provided for in the State Housing Law (Laws of 1926, ch. 823), and embody another and different attempt to solve the problem. The constitutionality of the scheme was unsuccessfully attacked in the courts. (*Mars Realty Corp.* v. *Sexton*, 141 Misc. Rep. 622; *Roche* v. *Sexton*, 268 N. Y. 594; cf. *Matter of Mount Hope Development Corp.* v. *James*, 258 N. Y. 510.) After ten years of experiment its use, for economic reasons, has proved inadequate as a solution.

Nothing is better settled than that the property of one individual cannot, without his consent, be devoted to the private use of another, even when there is an incidental or colorable benefit to the public. The facts here present no such case. In a matter of far-reaching public concern, the public is seeking to take the defendant's property and to administer it as part of a project conceived and to be carried out in its own interest and for its own protection. That is a public benefit and, therefore, at least as far as this case is concerned, a public use.

The orders should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, HUBBS and LOUGHRAN, JJ., concur; FINCH, J., concurs in result; O'BRIEN, J., dissents and votes to reverse.

Orders affirmed.