

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*Matted
4/18/55.*

*Modified by
M-310*

Honorable Jack Welch
County Attorney
Cameron County
Brownsville, Texas

Dear Sir:

Opinion No. O-1921
Re: Exemption of property owned
by Housing Authority of
Brownsville from State and
county ad valorem taxes.

By your letter of January 23, 1940, you request our
opinion upon the question of whether property owned by the
Housing Authority of Brownsville, Texas, is subject to State and
county ad valorem taxes, and in connection therewith submit an
able and appreciated brief.

It is pointed out by you that the Housing Authority of
Brownsville was organized and has acquired real estate in the
City of Brownsville in accordance with the provisions of the
"Housing Authorities Law," embodied in Chapter 21 of Title 28,
Vernon's Annotated Civil Statutes, and being Article 1269k
thereof.

Section 22 of the above cited Act creates or purports
to create the following exemptions from taxation:

"The property of an authority is declared to be
public property used for essential public and govern-
mental purposes and such property and an authority
shall be exempt from all taxes and special assessments
of the city, the county, the State or any political sub-
division thereof; provided, however, that in lieu of
such taxes or special assessments, an authority may
agree to make payments to the city or the county or
any such political subdivision for improvements, ser-
vices, and facilities furnished by such city, county,
or political subdivision for the benefit of a housing
project, but in no event shall such payments exceed

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

the estimated cost to such city, county, or political
subdivision of the improvements, services, or facili-
ties to be so furnished."

The foregoing exemption is so plain and unambiguous as
to remove the instant question from the recognized rule of
statutory construction that tax exemption statutes are con-
strued most strongly against exemptions. The intention of the
Legislature to create such exemption is too plain for argument,
and the sole issue involved in your inquiry is whether or not
tax-exemption statute is constitutional under that portion of
Article VIII, Section 2, Constitution of Texas, empowering the
Legislature, by general laws, to exempt from taxation "public
property used for public purposes . . ." and property held by
"institutions of purely public charity," and further providing
that "all laws exempting property from taxation other than the
property above mentioned shall be null and void"; also to be
considered in this connection is Article XI, Section 9, Consti-
tution of Texas, providing as follows:

"The property of counties, cities and towns, owned
and held only for public purposes, such as public
buildings and the sites therefor. Fire engines and the
furniture thereof, and all property used, or intended
for extinguishing fires, public grounds and all other
property devoted exclusively to the use and benefit
of the public shall be exempt from forced sale and from
taxation, provided, nothing herein shall prevent the
enforcement of the vendors lien, the mechanics or
builders lien, or other liens now existing."

In determining the constitutionality of Section 22 of
the above cited "Housing Authorities Law," it first becomes
necessary to determine the nature and scope of this measure
with reference to whether the property owned by the Brownsville
Housing Authority, created thereunder, comes within the intend-
ment and purview of the foregoing constitutional provisions
fixing limits upon the power of the Legislature to create exemp-
tions on property for taxation. To this end, we do not purpose
to outline the administrative details provided by the "Housing
Authorities Law," but rather to point only to the portions
thereof as tend to give the Brownsville Housing Authority, created
thereunder, the status and character of an agency or instrument-
ality of the State of Texas, created for a public purpose, and
to stamp the property owned thereby as "public property used

for public purposes," within the meaning of the above constitutional provision.

Section 4 of the Housing Authorities Law creates in each city of the State a "public body corporate and politic" to be known as the "Housing Authority" of the city, to be called into active existence for transacting business under said law by proper resolution of the governing body of said city, based upon certain findings of a need for better housing conditions. Under Section 5 of the Act the governing body of the Authority consists of five commissioners appointed by the mayor of such city, and the appointment, qualifications and tenure of said commissioners are fixed by said section, including a provision that no commissioner shall receive compensation for his services but shall only be entitled to necessary traveling expenses, incurred in the discharge of his duties. Section 6 provides that no commissioner or employee of an Authority shall acquire any interest direct or indirect in any housing project or in any contract for materials or services in connection therewith, and Section 8, in enumerating the statutory powers and duties of the Authority, declares that "an Authority shall constitute a public body corporate and politic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this Act." Among the powers granted is the right to sue and be sued, to have a seal, and the right of perpetual succession, to investigate into living, dwelling, and housing conditions, and the means and methods of improving the same, and to enter into any and all necessary contracts for this purpose, to lease or rent any dwellings, houses, etc., embraced in any housing project, and to own, hold or improve real and personal property, to acquire real property by the exercise of the power of eminent domain, to invest the funds of the Authority, and to conduct examinations and investigations, hear testimony and take proof on any matter material to the work of the Authority. Section 9 of the Act declares it to be the "policy of this State that each housing authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for dwelling accommodations at the lowest possible rates consistent with its providing decent, safe, and sanitary dwelling accommodations, and that no Housing Authority shall construct or operate any such project for profit, or the source of revenue to the city."

Sections 14, 15 and 16 of the Act provide respectively for the issuance of bonds by an authority for any of its corporate purposes, the form and conditions of sale of such bonds, and the provisions of the trust indentures and mortgages securing same. Section 20 provides that all real property of an authority

shall be exempt from levy and sale by virtue of an execution, or judgment lien, except as otherwise provided in the act, and Section 21 empowers an authority "to borrow money or accept grants or other financial assistance from the Federal Government."

As further indicative of the public purpose to be served by the "Housing Authorities Law" and the public character of the property owned or held by an authority created thereunder, the Legislature, in Section 2 of the Act, makes the following declaration or fact-finding:

"Sec. 2. It is hereby declared: (a) that there exist in the State insanitary or unsafe dwelling accommodations and that persons of low income are forced to reside in such insanitary or unsafe accommodations; that within the State there is a shortage of safe or sanitary dwelling accommodations available at rents which persons of low income can afford and that such persons are forced to occupy overcrowded and congested dwelling accommodations; that the aforesaid conditions cause an increase in and spread of disease and crime and constitute a menace to the health, safety, morals, and welfare of the residents of the State and impair economic values; that these conditions necessitate excessive and disproportionate expenditures of public funds for crime prevention and punishment, public health and safety, fire and accident protection, and other public services and facilities; (b) that these slum areas cannot be cleared, nor can the shortage of safe and sanitary dwellings for persons of low income be relieved, through the operation of private enterprise, and that the construction of housing projects for persons of low income (as herein defined) would therefore not be competitive with private enterprise; (c) that the clearance, replanning, and reconstruction of the areas in which insanitary or unsafe housing conditions exist and the providing of safe and sanitary dwelling accommodations for persons of low income are public uses and purposes for which public money may be spent and private property acquired and are governmental functions of State concern; that it is in the public interest that work on such projects be commenced as soon as possible in order to relieve unemployment which now constitutes an emergency; and the necessity in the public interest for the provisions hereinafter enacted; is hereby declared as a matter of legislative determination."

Honorable Jack Weich, page 5

It is true that legislative findings and determination of public use are not conclusive on the courts, but they are certainly entitled at least to great respect, since they relate to public conditions concerning which the Legislature, both by necessity and duty, must have known. Block vs. Hirsh, 256 U. S. 135, 41 Sup. Ct. 458, 65 L. Ed. 865; People vs. Charles Schweinler Press, 214 N. Y. 395, 108 N. E. 639; New York City Housing Authority vs. Muller, 270 N. Y. 333, 1 N. E. (2d) 153.

In determining what constitutes a public purpose or use, for which public funds may be applied, as contra-distinguished from a private purpose, the Court of Civil Appeals, in Bland, et al vs. City of Taylor, et al, 37 S. W. (2d)291, held as follows:

"The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused, and their determination of that matter should not be reversed, 'except in instances where the legislative determination of the question is palpably and manifestly arbitrary and incorrect.' Neal v. Boog-Scott (Tex. Civ. App.) 247 S. W. 689, 691; Walker v. City of Cincinnati, 21 Ohio St. 14, 8 Am. Rep. 24; Brodhead v. City of Milwaukee, 19 Wis. 624, 88 Am. Dec. 711; State v. Cornell, 53 Neb. 556, 74 N. W. 59, 39 L. R. A. 513, 68 Am. St. Rep. 629. And if there be any doubt as to whether the purpose questioned be a public use, the legislative determination thereof should control. Brown v. Galveston, supra; Amarillo v. Tutor, supra; State v. Cornell, supra; Norman v. Ky. Board of Mgrs., 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556."

There are no cases in this jurisdiction determining the constitutionality of the "Housing Authorities Law," or the tax exemption feature thereof, because governmental housing projects constitute a comparatively new means of remedying an ancient evil. But from the various features of the Texas "Housing Authorities Law," hereinabove adverted to, including the creation of a body politic and corporate to administer the Act, governed by commissioners who serve without pay, who are authorized to acquire, hold and sell real and personal property, to plan, construct, rent or lease housing projects for the clearance of slum areas and the providing of safe and sanitary housing accommodations for persons of low income, exercising the power of eminent domain to that end and authorized to issue bonds in furtherance of its corporate purposes, and to hold its properties

free from liens, execution, and taxation, certainly leaves no room to doubt that the Legislature of Texas has declared and committed itself to the proposition that the purposes to be served by this Act are public and governmental, and the property acquired, owned, held and used by the housing authorities created under the Act is public property used for public purposes. Not only did the Legislature expressly so declare, but these enumerated attributes or features of the Act are all, to our mind, indicia of this public and governmental purpose. Therefore, we would not feel constrained, even in the absence of authorities from other jurisdictions, to disturb this legislative declaration and fact-finding. We take this position because we do not think it can be controverted that legislation, such as under consideration here, designed to alleviate the conditions of disease, immorality and crime incident to crowded, unsafe and unsanitary housing conditions, is a proper and valid exercise of the reserved police power of the State to protect the health, safety and general welfare of the public.

Upon this theory, Housing Authorities Laws of other states have been fully sustained as the exercise of a proper governmental function for a valid public purpose. New York City Housing Authority vs. Muller, 270 N. Y. 333, 1 N. E. (2d) 153; McNulty vs. Owens, 199 S. E. 425; Wells vs. Housing Authority of City of Wilmington, et al, 197 S. E. 693. These cases turned upon constitutional and statutory provisions, substantially identical to those involved here, and, although persuasive only, we deem such authorities controlling, in principle, upon the instant question of whether or not property held by the Brownsville Housing Authority is "public property used for public purposes" within the meaning of pertinent constitutional provisions limiting tax exemptions to such property. Moreover, the last two cases cited above are more directly in point, in that the question was raised and determined regarding the validity and constitutionality of the tax-exemption feature of the acts under consideration, and the court, in each case, held that property to be used in carrying out a slum clearance and low-cost housing project was municipal property within the Constitution and also was property used exclusively for public purposes within the Constitution, so as to be exempt from taxation.

In our opinion, Section 22 of Article 1269k, Vernon's Annotated Civil Statutes, commonly known and cited as the "Housing Authorities Law" is a constitutional exemption from taxation, and property owned by the Housing Authority of Brownsville, Texas,

Honorable Jack Welch., page 7

duly created under said Act as a public body corporate and politic, and an agency or instrumentality of the State of Texas, —under its police power, is "public property used for public purposes," entitled to exemption from State and county ad valorem taxes under said "Housing Authorities Law" and controlling constitutional provisions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      Pat M. Neff, Jr.
                    Assistant

PMN:N

APPROVED FEB 28, 1940

ATTORNEY GENERAL OF TEXAS