IDALIA MARÍA CAROLINA McCORMICK ET AL., Petitioners and Appellants, v. B. MARRERO RÍOS, JUDGE, DISTRICT COURT OF GUAYAMA, Respondent and Appellee.

No. 9041. Argued September 5, 1944.—Decided December 7, 1944.

*Benicio Sánchez Castaño* and *Félix Ochoteco, Jr.,* for appellants. *Fernando B. Fornaris, Acting Attorney General (Jesús A. González* on the brief), *Francisco A. Arrillaga,* and *Antonio Riera,* for the intervener, Land Authority of Puerto Rico, plaintiff in the main action.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

On August 29, 1944, while this court was in vacation, the petitioners-appellants filed a petition praying for the issuance of an order directed to the District Court of Guayama and the Judge thereof, requiring them to show cause why a writ of prohibition should not be issued forbidding them to proceed further in a condemnation proceeding pending before said court, and, in the alternative, for a writ of certiorari to review and set aside an order rendered by the said court in the above-mentioned proceeding, on August 11, 1944.

On September 30, 1944, after hearing the parties on the propriety of the writ of prohibition sought, Mr. Justice Todd, as Acting Judge in Vacation, decided that the writ did not lie. Regarding the issuance of a writ of certiorari under Act No. 32 of 1943, the said Justice reserved the question for decision by the full court. On October 9, 1944, this court denied the petition for certiorari.

On October 3, 1944, the petitioners applied for a review by the full court of the decision of the Acting Judge in Vacation denying their petition for a writ of prohibition. The case has been submitted to us for final determination upon the pleadings and briefs presented to the respondent Justice.

The following is a summary of the facts alleged in said petition:

On December 29, 1943, The People of Puerto Rico instituted, in the District Court of Guayama, a proceeding to condemn a property belonging to the petitioners, for the use and benefit of the Land Authority of Puerto Rico, in order to divide the same into parcels for distribution among a number of *"agregados"* (squatters) so that the latter might

erect their homes, pursuant to the provisions of Title V of the Land Law, approved April 12, 1941. In the complaint said property was described as containing 129.33 acres (*cuerdas*), and tender was made to the defendants of the sum of $16,714.95 in payment of the realty, together with the plantations and improvements existing therein. A check for that amount was deposited in the District Court of Guayama.

At the time of the institution of said proceeding, The People of Puerto Rico filed a "Petition for declaration of taking and material delivery" and another document entitled "Declaration of taking for the acquisition and material delivery," in accordance with the provisions of § 5A of the "Act to provide for the condemnation of private property," approved March 12, 1903, as amended by Act No. 19 of November 30, 1942.

On January 13, 1944, the district court entered an order providing in effect that from that date the title to the condemned property in fee simple was vested in The People of Puerto Rico, for the use of the Land Authority; and that The People was entitled to the immediate possession and delivery of the property as soon as the owners of the same should be served with a copy of the order.

On February 8, 1944, the petitioners moved to set aside the order of January 13, 1944, and alleged that the court lacked jurisdiction to render the same for the following reasons:

(a) Because § 5A, added to the Eminent Domain Act by Act No. 2 of 1941 (Laws of 1941, p. 284), is unconstitutional and void, in that it fails to provide or secure the existence of funds to pay the compensation when the same shall have been finally determined.

(b) Because the amendatory Act No. 19 of November 30, 1942 (Spec. Sess. Laws, p. 82), also failed to provide specific funds so as to render the condemnation constitutional.

(c) Because the use for which it is sought to condemn the property is not a public use.

On August 11, 1944, the district court denied the motion, and thus the order of January 13 of the same year was allowed to stand.

The petitioners also allege that the order of January 13, confirmed by that of August 11, 1944, was rendered without jurisdiction, for the reasons already stated, and, further, that if said order is not set aside, the petitioners will be deprived of their property without due process of law and also of their constitutional right to a just compensation, since no law has been enacted making an adequate appropriation for the payment of the just compensation that might be fixed by the court; that the petitioners have no adequate legal remedy other than the writ of prohibition; that assuming that the order be appealable, the appeal could not be heard or decided until long after the petitioners would have been deprived of the possession of the property and after they would have sustained irreparable injury.

Subsequent to our decision in the case of *P. R. Ry. L. and P. Co.* v. *District Court,* 59 P.R.R. 912, in which the same questions now raised by the petitioners herein were set up and we held that the issuance of the writ of prohibition sought was proper, the Insular Legislature passed Act No. 19, approved November 30, 1942 (Spec. Sess. Laws, p. 94), in order to correct the defect in the existing eminent domain legislation, which failed to make adequate provision of funds for the payment of the compensation that might be finally determined by the court. That amendatory Act, in its pertinent part, reads as follows:

"Section 5(*b*).—In any judgment rendered in a condemnation proceeding for the acquisition of private property or of any right thereon for public use or utilization for the benefit of the community, instituted directly by The People of Puerto Rico or by the Insular Government, or on behalf thereof by any agency, authority, instrumentality or official of The People of Puerto Rico, in which the

amount determined by the court as just compensation for the property or the rights thereon, the object of such proceeding, is greater than the amount fixed by the plaintiff or deposited in the court as just compensation for such property or right thereon, The People of Puerto Rico shall pay the amount of the difference between the sum thus fixed by the plaintiff and deposited by him in the court and the sum that for the purpose has been determined by the court as just compensation for the property or the rights thereon, the object of such proceeding, with interest at the rate of six per cent per annum on such difference, to be computed from the date of the acquisition of such property or rights thereon up to the date of the payment of such difference.

"As soon as the judgment referred to in the preceding paragraph is final and unappealable, the Treasurer of Puerto Rico shall pay to the defendant in such condemnation proceedings the amount of the difference specified in the preceding paragraph, with interest thereon, as therein specified; and the Treasurer of Puerto Rico shall pay such difference and interest thereon, as provided in this section, chargeable to any funds in the insular treasury not otherwise appropriated.

"For the total payment of the difference referred to in the preceding paragraphs and the interest thereon, as herein provided, the good faith of The People of Puerto Rico is irrevocably pledged.

"The necessary amounts to carry out the provisions of this section are hereby appropriated out of any funds in the insular traesury not otherwise appropriated."

The above-quoted provisions are broader and more specific than those of the Federal law on the subject, entitled "Declaration of Taking Act." See 40 U.S.C.A. § 258e. The constitutionality of the Federal statute has been upheld by the Federal courts, which have repeatedly held that the provisions of the statute satisfy the requirements of § 1 of Amendment XIV to the Constitution, which prohibits the taking of private property without due process of law or without just compensation. See *United States* v. *47.21 acres of land, Parcel No. 5*, D. C. Ky., 1943, 48 F. Supp. 73; *Hessel* v. *A. Smith & Co.*, D. C. Ill., 1936, 15 F. Supp. 953.

Our local statute, *supra,* affords a full guaranty to the defendant in the condemnation proceeding that any differ-

ence existing in his favor between the amount deposited and that which may be finally determined by the court in its judgment, will be paid to him by the Treasurer of Puerto Rico, with interest thereon.

■■ The last ground relied on by the petitioners for the issuance of the writ of prohibition herein, is that the use for which the property is sought to be condemned is not a public use.

In the complaint filed by The People of Puerto Rico, it is alleged that "the Land Authority of Puerto Rico seeks the condemnation of the property described in the first paragraph hereof, in order to distribute and cede the same to a number of *agregados* at the rate of a parcel containing not less than one-fourth of a *cuerda* (*cuadro*) per family, on which said *agregados* may erect their homes."

In the "Statement of Motives" prefacing Act No. 26 approved April 12, 1941 (Laws of 1941, p. 388), entitled "Land Law of Puerto Rico," it is expressly declared that: "It is also an integral part of the moral purpose and the aims of dignity and economic freedom embodied in the public policy of the Legislature, to furnish the means whereby the social class of *agregados*, or, that is, of agricultural laborers enslavened through the fact that they are not the owners of even the lot where they have their homes, will disappear from Puerto Rico; . . . . ."

Section 7 of the same Act, as amended by Act No. 197, approved May 11, 1942 (Laws of 1942, p. 996), provides that the Land Authority is created for the purpose, among others, to "assist in the creation of new landowners, facilitate the utilization of land for the best public benefit under efficient and economic production plans; provide the means for the *agregados* and slum dwellers to acquire parcels of land on which to build their homes and to take all action leading to the most scientific, economic and efficient enjoyment of land by the people of Puerto Rico."

To carry out the purposes mentioned in the Act, § 8 thereof confers on the Land Authority "all the rights and powers necessary or advisable," . . . "(g) to acquire land by purchase, cession, transfer, exchange, lease, inheritance, donation, or by the exercise of the power of expropriation in the manner provided by this Act and the laws of Puerto Rico . . ."

Section 74 of the Land Law provides that, in order to promote the welfare, economic freedom, and social justice among the "*agregados*" "it is hereby declared that the purpose of this Title is that every '*agregado*' shall at least be entitled to hold the fourth part of a *cuerda* of land (*cuadro*) on which he may permanently erect his home."

The Legislature is clothed with wide discretion in determining what constitutes a public use and in adopting such measures as, in its judgment, will promote the welfare of the community. It is not the function of the courts to pass on the wisdom or expediency of particular legislation. If the latter contains the elements of public benefit, and the purpose sought to be accomplished is of a public character, the question as to how much benefit is to be derived by the public is one for the legislature, and not the courts. A stronger presumption arises in favor of the public nature of a proposed use when the appropriation is made on behalf of the government instead of by a private corporation. *New York City Housing Authority* v. *Muller,* 1 N.E. (2d) 153, 105 A.L.R. 905; *Krause* v. *Peoria Housing Authority,* 19 N.E. (2d) 193; *Dornan* v. *Phila. Housing Authority,* 200 Atl. 834.

It is the duty of every government to adopt such measures as may be necessary to promote the welfare and safeguard the health of all its citizens, especially of those who are precluded by their small means from acquiring land on which to erect their homes. A mere reading of the pertinent provisions of the Land Law, under which it is sought to condemn petitioners' property, is sufficient to convince us that

the purpose to which said property is to be devoted is of a public character, and that, in our judgment, it will greatly contribute to raising the standard of living of our working class. The taking of private property for the purpose of clearing slums and providing dwellings for persons of low incomes has been upheld as valid in numerous state decisions, it being considered a taking for public use. See 29 C.J.S. 851, § 64; 105 A.L.R. 911; *Willmon* v. *Powell*, 91 Cal. App. 1, 266 Pac. 1029; *Simmon* v. *O'Toole*, N.J.L. 32, 155 A. 449; *Oklahoma City* v. *Sanders*, 94 F. (2d) 323; and *United States* v. *Certain Lands in City of Louisville*, 78 F. (2d) 684.

█ Petitioners' contention that, as the property in question is under cultivation, planted with coconut-trees, the same can not be appropriated for division into parcels, lacks merit. Any plantation or building existing in the property at the time of the institution of the condemnation proceeding has nothing to do with the public use to which the property is to be devoted once the same has been condemned.

For the reasons stated, we are of the opinion that the respondent Justice did not err in denying the petition for a writ of prohibition.

The order appealed from will be affirmed.

Mr. Justice Todd, Jr., did not participate herein.