James O. Moore, J.
This is an action challenging the power of the State to appropriate certain real property owned by the plaintiff corporation on the ground that the taking is not for a ‘1 public use ’ ’ within the meaning of the provisions of the Constitution of this State and the United States.
The facts are not in dispute. In 1966 the Superintendent of Public Works, upon the recommendation of the Federal Bureau of Public Boads, adopted new safety standards limiting and controlling access to property located along the ramps leading to and from the Niagara Expressway, a controlled access interstate highway.
*100 Chapter 193 of the Laws of 1967 amended section 10 of the Highway Law by adding thereto subdivision 24-d which authorizes the Superintendent of Highways (now designated as the Commissioner of Transportation) to acquire by appropriation such property as may be necessary to re-establish private access to other property where such access has been destroyed by an acquisition of part of the other property for the reconstruction or maintenance of a State highway. Thereafter and in conformance with the policy of limiting access to property adjoining the Niagara Expressway, the Superintendent appropriated, in fee without access, the northerly boundary of the property owned by Carl and Virginia Fura fronting on Pine Avenue and abutting the exit ramp. As a consequence of this appropriation, the Fura property was landlocked and its only access to a public road was destroyed. By reason of this circumstance the estimated cost to the State of appropriating this property and destroying any access to the remaining property is $96,000. If access is provided to the balance of the Fura property, the damage to the Furas is reduced to $4,600.
On April 25, 1969, pursuant to section 10 (subd. 24-d) of the Highway Law, the State appropriated a portion of the plaintiff’s property, consisting of approximately .045 acre. This property adjoined the Fura property and the avowed purpose of taking was to re-establish access from the remaining Fura property to a public road. It is conceded that the State intends to convey the property appropriated from the plaintiff to the Furas for such purpose. The damage to the plaintiff by reason of this taking is' estimated to be $8,800, of which $6,500 represents the expense of relocating a sign.
The sole issue presented in this litigation is the constitutionality of the legislative plan generally described as “ substitute condemnation”. The exercise of the sovereign power of eminent domain is constitutionally limited to the taking of private property for a public use. By the enactment of section 10 (subd. 24-d) of the Highway Law, the Legislature has declared that the appropriation of the subject property under the circumstances presented in this case constitutes such a public use. The necessity for the taking is generally not justiciable but there does remain for judicial review the narrow legal question as to whether or not the exercise of the power is incident to and results from the construction of facilities dedicated to a public use. (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451.)
*101 The vast proliferation of governmental activity during the past many years has been accompanied by judicial recognition that the constitutional standard of public use encompasses far more than the traditional concept of the right of everybody and anybody to use the land structures and facilities that are so employed and, in fact, this restrictive test has long since been abandoned by the courts of this State. (Matter of New York City Housing Auth. v. Muller, 270 N. Y. 333, 342.)
Although the concept of substitute condemnation has not been the subject of explicit judicial approval in this State, the courts have consistently recognized the validity of appropriations of property for quasi-private use. (Matter of Watkins v. Ughetta, 273 App. Div. 969, affd. 297 N. Y. 1002 [1948]; Kaskel v. Impellitteri, 306 N. Y. 73; Cuglar v. Power Auth. of State of N. Y., 4 Misc 2d 879, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006 [1957]; Courtesy Sandwich Shop v. Port of New York Auth., 12 N Y 2d 379 [1963]; Cannata v. City of New York, 11 N Y 2d 210, app. dsmd. 371 U. S. 4 [1962]; Ross v. State of New York, 30 A D 2d 681, affd. 23 N Y 2d 807 [1969].)
The plaintiff seeks to distinguish these cases on the ground that in most instances the title to the property appropriated was retained by the State. Nonetheless, the rationale of the courts’ determination in these cases was not predicated on any such narrow distinction. Moreover, the redevelopment case, Cannata v. City of New York (11 N Y 2d 210, supra) and the relocation case, Matter of Watkins v. Ughetta (273 App. Div. 969, supra) clearly contemplated an eventual transfer of title of the property which was the subject of the appropriation.
In Brown v. United States (263 U. S. 78) the Supreme Court sustained the constitutionality of a taking for the purpose of relocating an entire town which has been displaced by the construction of a dam. The dispossessed owners were given lots in the new town site in exchange for their former properties. The court held that this type of substitute condemnation was the best means of making the former owners whole and was so closely connected with the acquisition of the area to be flooded that it was a part of the same public use. (Dohany v. Rogers, 281 U. S. 362; United States v. 10.47 Acres of Land, 218 F. Supp. 730; Pitznogle v. Western Maryland R. R. Co., 119 Md. 673; Smouse v. Kansas City Southern Ry. Co., 129 Kan. 176; Ann. 20 ALR 3d 862; 2A Nichols, Eminent Domain [3d ed.], § 7.226; Substitute Condemnation, 54. Cal. L. Bev. 1097.)
*102 The advent of limited access highways is illustrative of the necessity of the expanded concept of public use that has been developed in the case law. The continued efforts upon the part of the State to improve the safety of its thoroughfares are a paramount public purpose and the condemnation of properties designed to attain this end represents an unquestioned exercise of the sovereign power of eminent domain. When, as in the case at bar, the appropriation of the property necessary to effectuate these safety measures results in effectively destroying utility of all the property owned by the original condemnee by rendering it landlocked, the same public purpose permits the condemnation of an inconsequential portion of the adjoining land for the purpose of affording access to that portion of the condemnee’s property which is not essential to the safety of the limited access highway.
The substitute condemnation is, in fact, incident to the original taking. Moreover, there exists a separate public purpose in avoiding the creation of landlocked parcels of real property throughout the State and a further public purpose in affording fair compensation to the original condemnee in the form of public access to the remainder of his property when this can be effected by an inconsequential taking of adjoining property. Luke v. Massachusetts Turnpike Auth. (337 Mass. 304) is apposite. In that case the Supreme Judicial Court of Massachusetts held that the procurement of easements and the creation of rights of way for the benefit of parcels of land deprived of public access by reason of the creation of the Massachusetts Turnpike are by-products of the entire project and share the same public purpose.
Granting the continued vitality of the principle that the power of eminent domain cannot be exercised to deprive an owner of his property for the sole purpose of benefiting another private owner, it does not follow that this prohibits a substitute condemnation incident to the public use that motivated the original condemnation even though another private owner is benefited thereby. In the case at bar there is a close factual connection between the two takings and fundamental elements of fairness dictate that the original condemnee be compensated in part by creating access to a public road through the taking of an inconsequential portion of the plaintiff’s land. An additional public purpose is here served by avoiding the creation of a landlocked unproductive parcel of property.
*103 It is apparent that the possibility of abuse inheres in the unrestrained resort to substitute condemnation upon the part of public officials. Therefore, the courts must be alert to scrutinize with care challenges to the public purpose claimed to be served by such takings. In the instant case, however, there is no viable issue on this score.
The plaintiff’s motion to dismiss the affirmative defense set forth in the defendants’ answer is denied. Although no cross motion to dismiss the complaint has been made, the motion under CPLR 3211 (subd. [b]) “ searches the record”. (Rand v. Hearst Corp., 31 A D 2d 406, 408, affd. 26 N Y 2d 806. 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3211.48.) Consequently, since the complaint fails to state a claim upon which relief can be granted, it is dismissed, without costs to either party.