Bichard L. Baltimore, Jr., J.
The City of New Rochelle has filed an information charging the defendant with a violation of section 112 of the New Rochelle Building Code, which reads as follows: “ Before proceeding with the excavation, erection, alteration, repair, moving, demolition or change in the use or occupancy of a building from one use to another, or other structure regulated by this Code, or buildings as defined by the Zoning Ordinance of the City of New Rochelle * * * without first filing an application with the Building Official in writing and obtaining the required permit therefor
The information reads as follows: 1 ‘ Louis Miceli of Miceli & Miceli, 85 Emerson Avenue, did wilfully perform demolition work at 43 Lafayette Street without a Demolition Permit, which is in violation of Section 112 of the New Rochelle Building Code. ’ ’
The facts are conceded. The defendant did not apply to the Bureau of Buildings of the City of New Rochelle for a demolition permit. He had received a building, permit from the Urban Development Corporation of the State of New York, which he exhibited to the New Rochelle Inspector on January 3,1973 while performing work on premises 43 Lafayette Street in the City of New Rochelle.
On July 20, 1971, a partnership, “ Sharon ”, was the owner of the premises in question and entered into a contract to sell the premises to “ Casdan.”
On January 19, 1972 the Urban Development Corporation made its statutory finding required by section 10 (subd. [a], par. [1]) of the New York State Urban Development Corporation Act (L. 1968, ch. 174) reciting: “ that there exists, in the area in which the project is to be located, or in an area reasonably accessible to such area, a need for safe and sanitary housing accommodations for persons or families of low income, which the operations of private enterprise cannot provide ”,
*135 On December 23, 1972 Casdan assigned bis contract to purchase to “ Montrose ”.
Then followed a series of events on December 26,1972. Montrose assigned the contract to the Urban Development Corporation. Sharon delivered a letter to the Urban Development . Corporation permitting it to enter upon the premises “ for the purpose of preliminary test borings, foundation examination, excavation, [and] demolition of the existing excavated building ”. The Urban Development Corporation, as contract vendee of the property, issued its “ building permit for demolition and site preparation only.” The Urban Development Corporation delivered to Montrose a letter of intent engaging Montrose to perform general contract work upon the project.
On January 3, 1973 the defendant, Miceli, a demolition contractor in the employ of Montrose, entered upon the premises and demolished the existing vacated building, at which time the summons was issued for the violation contained in the information.
Subsequently, on January 15, 1973, Sharon conveyed to the Urban Development Corporation fee simple title to the property by a deed of that date.
Tile City of New Rochelle, in prosecuting the defendant, takes the position that the permit issued by the Urban Development Corporation is invalid in the City of New Rochelle. The city relies! upon three basic reasons: (1) The Urban Development
Corporation is unconstitutional as a violation of the home rule powerl
(2) The Urban Development Corporation at the time of the demolition was not the fee owner of the land, only a contract vendee and, therefore, had no authority to issue the permit.
(3) Where the city and State Building Code are the same, the Urban Development Corporation must apply to the city for a permit on the ground of “ feasibility ”.
We find that the Urban Development Corporation’s right to. undertake the Lafayette Street enterprise is based upon the. “ statutory finding ” under section 10 of the Urban Development Corporation Act of January 19, 1972. The enterprise became ^n Urban Development Corporation Project No. 6253 (6) State’s sovereign ‘ ‘ override ’ ’ powers applied. and the
-called “ override ” power is'conferred by subdivisions [3) of section,16 of the Urban Development Corporation The sd (2) and Act:
“(2) in part ¡xcept with respect to a project consisting in whole or if real property acquired by the corporation pursuant *136 to section fourteen of this act, before commencing the acquisi-' tion, construction, reconstruction, rehabilitation, alteration or improvement of any project: (a) the corporation shall file a copy of the general project plan, including the findings required pursuant to section ten of this act, in its corporate offices and in the office of the clerk of any municipality in which the project is to be located, and shall provide a copy thereof to the chief executive officer of any .such municipality, the chairman of the planning board or commission of any such municipality, or if there is no planning board or commission, to the presiding officer of the local governing body. Upon request, any other person shall be furnished with a digest of such plan; (b) the corporation shall publish a notice of the filing of such plan and the availability of digests thereof in one newspaper of general circulation within the municipality, which notice shall also state that a public hearing will be held to consider the plan at a . specified time and place on a date not less than thirty days after such publication; (c) the corporation shall conduct a public hearing pursuant to such notice; (d) any person shall have the opportunity to present written comments on the plan within thirty days after the public hearing; (e) any municipality within which the project is to be located, by majority vote of its planning board or commission, or in the event there is no planning board or commission, by majority vote of its local governing body, may recommend approval, disapproval or modification of the plan, which recommendation shall be submitted in writing to the corporation within thirty days after such hearing; (f) after due consideration of such testimony and comments and municipal recommendations, if any, the corporation may affirm, modify or withdraw the plan in the manner provided for the initial filing of such plan in paragraph (a) of this subdivision, provided, however, that in the event any such municipality has recommended disapproval or modification of the plan, as provided herein, the corporation may affirm the plan only by a vote of two-thirds of the directors thereof then in office. “ (3) After consultation with local officials, as provided in subdivision one of this section, the corporation and any subsidiary thereof shall, in constructing, reconstructing, rehabilitating, altering or improving any project, comply with the requirements of local laws, ordinances, codes, charters or regulations applicáble to such construction, reconstruction, rehabilitation, alter- • ation or improvement, provided however, that when, in the discretion of the corporation, .such compliance is not feasible or practicable, the corporation, and any subsidiary thereof shall *137 comply with the requirements of the state building construction code, formulated by the state building code council pursuant to article eighteen of the executive law, applicable to such construction, ¡reconstruction, rehabilitation, alteration or improvement. No municipality shall have power to modify or change the drawings, plans or specifications for the construction, reconstruction, rehabilitation, alteration or improvement of any project of the corporation or of any subsidiary thereof, or the construction, plumbing, heating, lighting or other mechanical branch of work necessary to complete the work in question, nor to require that any person, firm or corporation employed on any such work in any other or different manner than that provided by such plans and specifications, nor to. 'require that any such person, firm or corporation obtain any other or additional authority, approval, permit or certificate from such municipality in relation to the work being done, ■and the doing of any such work by any person, firm or corporation in accordance with the terms of such drawings, plans, specifications or contracts shall not subject said person, firm or corporation to any liability or penalty, civil or criminal, other than as may be stated in such contracts or incidental to the proper enforcement thereof; nor shall any municipality have power to require the corporation or any subsidiary thereof, or lessee therefrom or successor in interest thereto, to obtain any other or additional authority, approval, permit, certificate or certificate of occupancy from such municipality as a condition of owning, using, maintaining, operating or occupying any project acquired, constructed, reconstructed, rehabilitated, altered or improved by the corporation or . by any subsidiary thereof. The foregoing provisions shall not preclude any municipality from exercising the right of inspection for the purpose of requiring compliance by any such project with local requirements for operation and maintenance, affecting the health, safety and welfare of the occupants thereof, provided, however, that such compliance does not require changes, modifications or additions to the original construction of such project.”
The City of New Rochelle relies upon an alleged failure on the part of the Legislature to enact the override power legally. The city contends that the act fails to meet the requirements of section. 2 (subd. [b], par. [1]) of article IX of the New York State Constitution, which provides as follows:
“(b) Subject to the bill of rights of local governments and other applicable provisions of this constitution, the legislature:
*138 “ (1) Shall enact, and may from time to time amend, a statute of local governments granting to local governments powers including but not limited to those of local legislation and administration in addition to the powers vested in them by this article. A power granted in such statute may be repealed, diminished, impaired or suspended only by enactment of a statute by the legislature with the approval of the governor at its regular session in one calendar year and the re-enactment and approval of such statute in the following calendar year.”
The city’s position is that the New York State Urban Development Corporation Act (L. 1968, ch. 174, as amd.) was not enacted by the. Legislature with the approval of the Governor at its regular session of one calendar year and re-enacted and approved in the following calendar year. It contends that the Urban- Development Corporation may not repeal, diminish, impair or suspend any power granted to local governments by . article IX of the New York State Constitution, and therefore subdivisions (2) and (3) of section 16 are unconstitutional.
The Urban Development Corporation as a State agency derives its “ override ” power from its constitutional power to ignore the restraints of local regulation and not from the Urban Development Corporation Act or any other statute. The Urban Development Corporation Act is merely confirmatory of the existing override power.
No appellate court has passed upon the constitutionality of the Urban Development Corporation. The only two cases which this court has found are Floyd v. New York State Urban Development Corp. (70 Misc 2d 187 [Sup. Ct., N. Y. County, May, 1972]) and Valvo v. Urban Development Corp. (71 Misc 2d 335 [Sup. Ct., Westchester County, Sept. 5, 1972]). The latter upheld the exemption of the Urban Development Corporation from local zoning laws, citing Floyd. Floyd (supra, p. 188) held subdivision 3 of section 16 of the New York State Urban Development Corporation Act “ is valid and constitutional ” insofar as it purports to exempt projects of the Urban Development Corporation from zoning laws and regulations and other laws and regulations of cities, towns and villages of the State, and in particular, the Village of Ossining.
We hold that the Legislature found that the purposes for which the Urban Development Corporation was created were infused with a State-wide interest. The Legislature declared:
The primary authority for the override power lies in the State Constitution itself. Section 1 of article XVLII provides:
*139 Subject to the provisions of this article, the legislature may provide in such manner, by such means and upon such terms and conditions as it may prescribe for low rent housing and nursing home accommodations for persons of low income as defined by law, or for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas, or for both such purposes, and for recreational and other facilities incidental or appurtenant thereto.”
“ The exercise of the powers granted by this act will be in all respects for the benefit of the people of this state,lor the increase of their commerce, welfare and prosperity, and for the improvement of their health and living conditions, and will constitute the performance of an essential governmental function ’ ’. (New York.State Urban Development Corporation Act, § .22; L. 1968, ch. 174, § 1.)
The Legislature made a further declaration: “ It is further found and declared that there continues to exist throughout the state a seriously inadequate supply of safe and sanitary dwelling accommodations for persons and families of low income.. This condition is contrary to the public interest and threatens the health, safety, welfare, comfort and security of the people of the state. The ordinary operations of private enterprise cannot provide añ adequate supply of safe and sanitary dwelling accommodations at rentals which persons and families of low income can afford.” (New York State Urban Development Corporation Act, § 2 ; L. 1968, ch. 174, § 1.)
We hold that Urban Development Corporation Act is a corollary of and supportive of the Constitution provision above.
The city relies upon article IX of the Constitution, but article IX is expressly subject to “ other applicable provisions of this Constitution.” Section 2 of article XVTII in defining the power to implement the responsibilitiés specifically granted the State Legislature these powers ‘ ‘ notwithstanding any provision in any other article of this constitution ”.
Article IX (§3, subd. [a]) of the Constitution further restricts that article with the following language. “ Except as expressly provided, nothing in this article shall restrict or impair any power of the legislature in relation to: * * * (3) matters other than the property, affairs or government of a local government ”.
We hold that despite the home rule of New York, the Legislature is unrestricted with respect thereto when it acts with respect to matters of “ State concern ”. (Adler v. Deegan, 251 N. Y. 467 [1929]; Matter of N. Y. City Housing Auth. v. Muller, 270 N. Y. 333 [1936].)
*140 Thus the override power is constitutional irrespective of whether the Urban Development Corporation Act was passed by the Legislature with the approval of the Governor at its regular session in one calendar year, and re-enacted and approved in the following calendar year.
There is no merit in the city’s position that because the New Rochelle Building Code is the same as the New York State Building Code, there could be no “ override ” because of the feasibility and practicability for Urban Development Corporation to comply with the New Rochelle Building Code.
We have held that the Urban Development Corporation is constitutional and had a right to issue a building permit. The defendant had a right to rely upon this building permit and was under no obligation to apply for a second permit from the City of New Rochelle. The State’s contention that Urban Development Corporation lacked the power to issue the permit because it was a nonowner of the date in question, is negated by the very language of the New Rochelle Building Code. Section 112.3 permits a nonowner to apply for a building permit. “ If the application [for the building permit] is made by a person other than the owner in fee or a licensed architect or professional engineer, it shall be accompanied by a duly verified affidavit of the owner that the proposed work is authorized by the owner in fee and that the applicant is authorized to make such application.”
The defendant, having complied with the applicable law, is found not guilty.