YONKERS COMMUNITY DEVELOPMENT AGENCY, Plaintiff, v. WILLIAM T. MORRIS, JR., et al., Defendants. (Parcel I.) YONKERS COMMUNITY DEVELOPMENT AGENCY, Respondent, v. WILLIAM T. MORRIS, JR., et al., Defendants, and DAB-O-MATIC CORP. et al., Appellants. (Parcel II.) YONKERS COMMUNITY DEVELOPMENT AGENCY, Plaintiff, v. WILLIAM T. MORRIS, JR., et al., Defendants. (Parcel III.) YONKERS COMMUNITY DEVELOPMENT AGENCY, Respondent, v. LESTER WEINBERG, Appellant. YONKERS COMMUNITY DEVELOPMENT AGENCY, Respondent, v. THOMAS BARCA et al., Appellants, et al., Defendant.— Consolidated appeals from three judgments of the Supreme Court, Westchester County, one in the first above-mentioned proceeding dated October 24, 1973, and one in each of the other two proceedings dated October 23, 1973, *inter alia*, condemning certain real property. Judgments affirmed, without costs. By these proceedings, plaintiff sought to condemn three separate par-

cels of real property in Yonkers, New York, for the purpose of urban renewal. The appealing defendants have interposed answers, claiming that the taking is unconstitutional as to them, and demanded a hearing concerning their allegations of illegality. In general, appellants claim that the purpose of the taking was designed to placate Otis Elevator Company, a large taxpayer and employer in Yonkers, against removing its manufacturing plant, by selling to Otis, for expansion of its facilities, the land which is the subject of the condemnation proceedings. Special Term held that no hearing was required and granted condemnation to plaintiff. It is, of course, the rule that whether a condemnation is for a public purpose is a judicial question, the resolution depending to a large extent on the legislative findings (*Matter of New York City Housing Auth.* v. *Muller*, 270 N. Y. 333; *Matter of Murray* v. *La Guardia*, 291 N. Y. 320). The taking of substandard real estate by a municipality for redevelopment by private corporations is a public use (*Cannata* v. *City of New York*, 11 N Y 2d 210, 215). Here the legislative findings establish that the area in question is appropriate for urban renewal, in that substandard property would be eliminated, a marketable industrial site created, and other city development integrated with the proposed urban renewal. These findings reflect as well the recognized need for expansion of Otis. Appellants in their brief urge that, though they do not question the need of the parcels for the purposes of plaintiff, or that particular parcels are substandard, the dominant purpose of the taking is private and not public. But it is settled that an area may be rehabilitated according to a design and for any purpose which renders the area no longer substandard (*Kaskel* v. *Impellitteri*, 306 N. Y. 73). No justiciable issue is raised on this record with respect to the claim of benefit to Otis only, as the legislative findings demonstrate at least a benefit as well to the city as a whole by the elimination of a substandard area, and the development of an industrial site. A hearing was thus unnecessary. Hopkins, Acting P. J., Martuscello, Cohalan and Brennan, JJ., concur; Munder, J., dissents and votes to reverse the judgments and to remit the proceedings to Special Term for a hearing, with the following memorandum: Special Term concluded that there was no basis for the application by some of the defendants for a hearing on the legality and constitutionality of the taking. I cannot agree and therefore cannot vote with the majority in affirming the judgments. As stated in their brief, appellants do not raise the issue of whether the property in question is necessary to plaintiff's purpose, or whether the property is a slum or substandard. They simply urge that " the dominant purpose of the entire taking is private and not public ". In my opinion, appellants have established their right to be heard on the issue of public use (see *Fifth Ave. Coach Lines* v. *City of New York*, 11 N Y 2d 342, 348). The record shows that the Otis Elevator Company, one of the largest single employers in Yonkers, has been threatening to leave the city for many years because of lack of space to expand and modernize its facilities. This, understandably, caused tremendous concern to the city fathers as well as local, State and Federal Government officials representing the area. No stone was left unturned in the effort to coax Otis to remain in Yonkers. No less than three different sites were offered to Otis for expansion, etc., but all three were turned down. Finally, the property in question in this case, which adjoins the property presently occupied by Otis, was selected and apparently found to be "suitable ". The machinery then was set in motion to acquire the property (which consists of approximately 9.2 acres), clear the land, grade it and then sell it to Otis, and all this under the guise of urban renewal. True, appellants do not say that there was any fraud or deceit on the part of the officials and agencies involved. I, however, agree with their con-

tention that there is sufficient question raised about "public use" to require a hearing. The fact that a project is desirable or that it may have some indirect public benefit does not mean that it is essentially for a public purpose (see *Matter of New York City Housing Auth.* v. *Muller*, 270 N. Y. 333, 343). The courts must be diligent in protecting the private rights of property owners against unlawful incursions by government in the name of progress. The question of whether or not a taking is for a public use is a *judicial* one. That question has not been judicially determined in this case (see *Denihan Enterprises* v. *O'Dwyer*, 302 N. Y. 451, 457-458).