[File No. 7357]

C. J. FERCH, on behalf of himself and all others similarly situated, Appellant, v. THE HOUSING AUTHORITY OF CASS COUNTY, NORTH DAKOTA, and The City of Southwest Fargo, North Dakota, Respondents.

(59 NW2d 849)

Opinion filed July 22d, 1953

*Leonell W. Fraase,* for appellants.

*Ohnstad & McCauley,* for respondents.

770

*Dean Winkjer, Amicus Curiae.*

GRIMSON, J. The plaintiff, on behalf of himself and other tax-payers similarly situated, sought an injunction in district court to have the defendants restrained from completing arrangements with the Public Housing Administration, a federally owned corporation, for the purpose of effecting a slum clearance and low rent housing program in the City of Southwest Fargo. The district court found in favor of the defendants and plaintiff appeals.

The following facts are admitted: The plaintiff is a citizen, resident, taxpayer and owner of real estate in the City of Southwest Fargo, a municipal corporation. The defendant, the Housing Authority of Cass County, hereinafter referred to as the Authority, was organized in accordance with the provisions of Chapter 23-11 NDRC 1943 and 1949 Supplement, the North Dakota Housing Authorities Law, by a resolution of the Board of Commissioners of Cass County on April 5, 1951, and claims all the powers, duties, rights and privileges provided therein. The defendant City of Southwest Fargo is a duly incorporated city under the laws of North Dakota. The Public Housing Administration is a federal corporation organized under the U. S. Housing Act of 1937, 42 USCA Sec 1401–1430, as amended, for the purpose of aiding local public housing agencies in the development and operation of slum clearance and low rent housing projects. On April 10, 1951, the Housing Authority of Cass County and the City of Southwest Fargo entered into a "cooperation agreement" as required by the Federal Housing Administration providing for the cooperation of the two bodies in slum clearance and in the development of a low rent housing project.

On the 16th day of May, 1951, the Housing Authority of Cass County applied to the Public Housing Administration for a program reservation for 36 dwelling units of a proposed low rent and slum clearance housing project in the City of Southwest Fargo and for a loan of $7200.00 for the purpose of preliminary surveys and planning. On July 6, 1951, the Public Housing Administration approved such program for 24 dwelling units. The Housing Authority of Cass County has applied for a preliminary loan of $4800.00 of which $960.00 has been received. The Housing Authority of Cass County now intends to enter into a further contract with the Public Housing Administration for a loan of $200,000.00, being 90 per cent of the cost of the proposed project, and plans to go on with the project under the federal and state housing laws.

The plaintiff claims that the defendants should be enjoined from proceeding further along this line on the grounds that the State Act, Chap 23–11 NDRC 1943 and 1949 Supplement, under which they are acting, is unconstitutional and that the cooperation agreement is ultra vires and void.

It is a well established rule in this jurisdiction that a statute enacted by the legislature is presumed to be constitutional. This presumption is conclusive unless it is clearly shown that the enactment is prohibited by the constitution of the state or of the United States. The burden of showing unconstitutionality is upon him who alleges that some particular provision of the state or federal constitution has been violated. Stark v. City of Jamestown, 76 ND 422, 37 NW2d 516; State ex rel. Sathre v. Board of University & School Lands, 65 ND 687, 262 NW 60; State ex rel. Linde v. Taylor, 33 ND 76, 85, 86, 156 NW 561, LRA 1918B 156, Ann Cases 1918A 583.

"All statutes must be construed, if possible, so as to give them validity, force and effect, and carry out the will of the legislator. In doing this respect must always be had to the language of the statute, the plain and obvious meaning of the words used, and . . . their objects and purposes." People v. Sweetser, 1 Dak 295, 46 NW 452.

"The courts invariably give the most careful consideration to questions involving the interpretation and application of the

Constitution and approach constitutional questions with great deliberation, exercising their power in this respect with the greatest possible caution and even reluctance; and they should never declare a statute void, unless its invalidity is, in their judgment, beyond reasonable doubt." 11 Am Jur, Constitutional Law, Sec 91, p 718.

The first contention of the plaintiff is that "The State Act is unconstitutional and void in that the purposes authorized are not public or governmental purposes within the meaning of Article I, Section 14 of the state constitution and thus the power of eminent domain cannot be exercised."

The purpose of the State Act must be determined in view of the situation that now exists. The changes in North Dakota since the constitution was enacted must be taken into consideration. The constitution is unchanged but the needs over which it may control have changed.

"Views as to what constitutes a public use necessarily vary with changing conceptions of the scope and functions of government, . . . . As governmental activities increase with the growing complexity and integration of society, the concept of 'public use' naturally expands in proportion." Dornan v. Philadelphia Housing Authority, 331 Pa 209, 200 A 834. See also, Borgnis v. Falk Co., 147 Wis 327, 133 NW 209, 215, 216, 37 LRA NS 489, 3 NCCA 649.

During the last twenty years much attention has been given to the evils caused by the lack of adequate housing for people of low incomes and their congregation into slum areas. The housing division of the Public Works Administration undertook the clearance of slum areas and the construction of low rent housing projects. Then two world wars have created the problem of aiding needy veterans in obtaining housing. Favorable loans to veterans for that purpose were provided. These activities have been continued by the Federal Government in various forms and are now authorized by the 1937 Federal Housing Act, 42 USCA, Secs 1401–1430, as amended, hereinafter referred to as the Federal Act. The avowed purpose of that Act is to lend financial assistance to cities seeking to remove slum areas and to substitute therefor low cost housing for persons of low in-

come, preference being given to veterans. This act has been held to be for the promotion of general welfare and therefore constitutional. See Cleveland v. United States, 323 US 329, 65 S Ct 280, 89 Law ed 274; United States v. Boyle, 52 F Supp 906 (ND Ohio); Oklahoma v. Sanders, 94 F2d 323, 115 ALR 363 (10th Cir).

The first attempt in North Dakota along that line was the enactment in 1919 of the law providing for the Home Building Association of North Dakota, to encourage home building and home ownership in this state. The Act authorized the State, as the Home Building Association, to build homes for individuals on certain conditions. That Act was, in Green v. Frazier, 44 ND 395, 176 NW 11, aff'd 253 US 233, 64 L ed 878, 40 S Ct 499, declared to be for a public purpose and constitutional. That, however, proved an unsuccessful business undertaking and was abandoned. There was no great need for new housing then. Now it is a matter of common knowledge that housing is scarce, that slum conditions have appeared in our larger cities and that there is need for housing for people of low income at rentals they can afford to pay.

The North Dakota Housing Authorities Act, hereinafter called the State Act, Chapter 23-11 NDRC 1943, as amended in the 1949 Supplement, was first passed in 1937 to enable municipalities to take advantage of the Federal Act. It creates in each city of more than 5000 population and in each county of the state "a public body corporate and politic to be known as the 'housing authority' of the city or county, as the case may be." Such housing authority comes into existence when the governing body of the city or county by a proper resolution declares the need for a housing authority. As a basis for such declaration the governing body must find "(1) That insanitary or unsafe inhabited dwelling accommodations exist in the city or county; or (2) That there is a shortage of safe or sanitary dwelling accommodations in such city or county available to persons of low income at rentals they can afford to pay." Sec 23-1103 NDRC 1943. That section further provides that in making such resolution the governing body may take into consideration "the degree of overcrowding, the percentage of land coverage, the light, air,

space, and access available to the inhabitants of such dwelling accommodations, the size and arrangement of the rooms, the sanitary facilities, and the extent to which conditions which endanger life or property by fire or other causes exist in such buildings." A favorable action by the local authorities is to be taken only if it is found that such conditions exist.

The primary object of all government is to provide for the welfare of its citizens. For that purpose laws are enacted to foster the health, morals and safety of the people. To carry that out taxes are levied. One of the fields in which there is need for the enactment of a law for that purpose is in the ever growing slum districts in our cities. It is generally recognized that in such districts the living quarters of the unfortunate, who have not the means of living in better quarters, are congested. Heating, ventilation, sunlight and sanitary conditions are meager. Such places become breeding places of disease, immorality and crime. The character of the houses in such districts makes them a fire hazard. The government is often put to great expense in combating disease, crime and conflagration originating in such quarters. They menace not only the health, safety and morals of those living there, but since disease, crime, immorality and fire can, with difficulty, be confined to points of origin, these districts become a menace to the whole community and to the state. In Sec 2, Chapter 102, SL 1937, the legislature has declared that these conditions exist in this state.

Under the State Act it is proposed that the housing authorities cooperate with the municipal authorities in slum clearance, and with the aid afforded by the Federal Act build sanitary low rent dwellings. The legislature has declared that this is for "public uses and purposes for which public money may be spent and private property acquired . . . ." Sec 2, Chap 102, SL 1937.

The declaration of our legislature that such projects are devoted to the public use, while not necessarily binding or conclusive upon the courts, is entitled to great weight. This declaration also has the support and the concurrence of the Congress of the United States and of the legislatures of at least 32 states which have enacted similar legislation. It is not the duty of the

courts to interfere with such legislative finding unless it clearly appears to be erroneous and without reasonable foundation. In Rutherford v. City of Great Falls, 107 Mont 512, 86 P2d 656, it is well said:

"The public nature of slum clearance projects having been recognized and passed upon by the legislature, as was their right, it is not now our duty or prerogative to interfere with that legislative finding in the absence of a clear showing that the determination of that body was wrong. Their findings, while not conclusive, are entitled to much weight."

In all of the states which have enacted similar legislation for the purpose of cooperating with the Federal Act, where its constitutionality has been challenged, the courts have found the legislation to be for a public purpose and in furtherance of a proper governmental function.

In Housing Authority v. Dockweiler, 14 Cal2d 437, 94 P2d 794, the court said:

"However, aside from the respect to be accorded the legislative declaration of the public purpose underlying the statutes here challenged, it is our view, and we are satisfied that both reason and authority support us, that the proposed elimination of slums and the erection of safe and sanitary low-rent dwelling units for persons of the prescribed restricted income will do much to advance the public welfare and to protect the public safety and morals and are in fact and law public purposes."

In Allydonn Realty Corp. v. Holyoke Housing Authority, 304 Mass 288, 23 NE2d 665, 668, the court said:

"The elimination of slums can be found to be a direct benefit and advantage to all of the people, to be a matter not readily approached through private initiative but demanding coordinated effort by a single authority, to be in line with the purposes of promoting the public safety, health and welfare for which the government of the Commonwealth was established, and to require for its successful accomplishment the exercise of the power of eminent domain. It may well be deemed to rise to the dignity of a public service."

In Chapman v. Huntington Housing Authority, 121 W Va 319, 3 SE2d 502, the court says:

"In these modern times, it can scarcely be gainsaid that slums are areas having insanitary and substandard housing, and are a menace to the health, welfare and morals of any community in which they exist. Slum areas, because of the congestion, filth and insanitary conditions which are their ever-existing qualities are the breeding places of crime, immorality and disease. These evils necessarily and inevitably strike at the heart of the happiness and well being of all the people of the community. They cannot run rampant in any part of a community without stretching their tentacles menacingly throughout its entire length and breadth. Thus the eradication of slum areas would seem to rest upon the firm foundation of the police power which inherently resides in the legislative branch of every state government. Any purpose leading toward that end is a public purpose." (Cases cited.)

In McNulty v. Owens, 188 SC 377, 199 SE 425, the court says:

". . . An examination of the juvenile delinquency in Columbia during the year 1937 shows that practically all of these cases come from bad housing areas. A similar check indicates that bad housing is a very material factor in our high infant mortality rate.

"Experience in other parts of the country and in England indicate a very substantial improvement in health and in morals where sanitary housing has been provided for persons of low income. . . .

"Considering all of these matters, including the obvious need for low-cost housing, the apparent inability of private capital to supply such housing, and the satisfactory solution of the problem afforded by similar governmental programs of slum clearance and low-cost housing here and elsewhere, we conclude that the slum-clearance and low-cost housing project planned by the Columbia Housing Authority is an exercise of a proper governmental function for a valid public purpose."

In our Housing Authorities Law, as in the laws of other states, special provisions are made for veterans, Sec 23–1131 1949 Supplement, but that also is for a public purpose.

In the Opinion of the Justices, 320 Mass 773, 67 NE2d 588, 165 ALR 807, it is stated:

"That the expenditure of public money in recognition of military services, even long after such services have been rendered, though such expenditure of money is directly for the private benefit of the persons rendering such services, is a public purpose has been held or stated in decisions of this court or in opinions of its Justices. (Citing cases.) The constitutionality of statutes providing for preferences to veterans in the classified civil service has been sustained upon somewhat analogous principles. . . . (Citing authority.) In the decisions and opinions treating expenditures of money in recognition of military services as expenditures for a public purpose, the form of the expenditures considered was different from the form of the expenditure authorized by the pending bill. We perceive no difference, however, with respect to the nature of the purpose as a public purpose between the expenditures there considered and expenditure in the form authorized by the pending bill to provide housing for the benefit of service men, veterans and their families in the existing condition of an acute shortage of housing. It is not for us to express any opinion upon the expediency of expenditure of public money in the form authorized in the pending bill. Clearly, it is not so unreasonable as to preclude that purpose being a public purpose."

Plaintiff cites Minnesota Canal & Power Co. v. Koochiching Co., 97 Minn 429, 107 NW 405, 5 LRA NS 638, 7 Ann Cases 1182, as holding that the public benefit of a project is not sufficient to constitute a public use. That case, however, is distinguished in the later case of Thomas v. Housing & Redevelopment Authority, 234 Minn 221, 48 NW2d 175, where it is pointed out that the use of the project in the cited case was mainly for private purposes. In the Thomas case the Minnesota Court holds that:

"The fundamental purpose of the state in the enactment of the Municipal Housing and Redevelopment Act . . . is to protect the health, safety, and general welfare of the public. The elimination of slums and the erection of safe and sanitary low-rent dwelling units for persons of the prescribed restrictive incomes referred to in the act will do a great deal to advance the public welfare and protect public safety and morals and will

result in a direct benefit and advantage to all the people. The contemplated taking of property for low-rent housing under the facts and circumstances here, as provided in the act, constitutes a taking for public use, and the exercise of the power of eminent domain, as provided in the act, is not a violation of Minn Const art 1, sec 13."

The appellant quotes Opinion of the Justices, 211 Mass 624, 98 NE 611, 42 LRA NS 221, to the effect that a prior Massachusetts law providing for housing at public expense was held unconstitutional as not being for a public purpose. That case, however, is distinguished in the later case of Allydonn Realty Corp. v. Holyoke Housing Authority, 304 Mass 288, 23 NE2d 665. The court there said that the law involved in the former case ". . . was not a slum clearance law. It did not eliminate unsafe or unsanitary dwellings. . . . Any effect that it might have in preserving the public safety, health, and morals was incidental, remote and doubtful." The Massachusetts Court in this later case had for consideration the Massachusetts Housing Authority Law, similar to our statute and said: "The real purpose of the statute is therefore the elimination of slums and unsafe and unsanitary dwellings, and the provision by public funds of low-rent housing is only a means by which the main object is to be accomplished. The statute as a whole is designed to serve a public need, and the money expended for low-rent housing, as well as that expended for slum clearance, is for a public use."

In United States v. Certain Lands in City of Louisville, 78 F2d 684 (6th Cir 1935), cited by plaintiff, it was held that the federal government could not condemn private property for low cost housing and slum clearance and to reduce unemployment, and that the NIRA was unconstitutional insofar as it authorized such condemnation since it was not for a public use. However, the decision admitted:

"What is a public use under one sovereign may not be a public use under another. . . . The state and federal governments are distinct sovereignties, . . . . In the exercise of its police power a state may do those things which benefit the health, mor-

als, and welfare of its people. The federal government has no such power within the states."

This case was decided by a divided court and the decision contains a strong dissent by Judge Allen. In more recent cases, courts of equal dignity have considered the use to be public, Oklahoma City v. Sanders, 94 F2d 323 (10th Cir 1938); Keyes v. United States, 73 App DC 273, 119 F2d 444, (1941), and have upheld the constitutionality of the present federal act, Keyes v. United States, supra; Cleveland v. United States, 323 US 329, 65 S Ct 280, 89 L ed 274.

Other cases cited by the appellant are not in point. They do not involve slum clearance projects.

The real purpose of both the State and Federal Acts is to combat slum conditions and overcome them for the protection, not only of the inhabitants therein but the public at large. That is a public purpose.

With that in view the State Act authorizes the Housing Authority to construct sanitary buildings with the aid afforded under the Federal Act and declares such property to be "public property used for essential public and governmental purposes . . . ." Sec 23–1129. We find that declaration correct.

The following cases deal generally with the purpose and constitutionality of our housing laws and support our decision thereon: Knoxville Housing Authority v. City of Knoxville, 174 Tenn 76, 123 SW2d 1085; State ex rel. Porterie v. Housing Authority of New Orleans, 190 La 710, 182 So 725; Allydonn Realty Corp. v. Holyoke Housing Authority, 304 Mass 288, 23 NE2d 665; Opinion to the Governor, 76 RI 249, 69 Atl2d 531; State ex rel. Helena Housing Authority v. City Council of City of Helena, 108 Mont 347, 90 P2d 514; Dornan v. Philadelphia Housing Authority, 331 Pa 209, 200 Atl 834; Williamson v. Housing Authority of Augusta, 186 Ga 673, 199 SE 43; McNulty v. Owens, 188 SC 377, 199 SE 425; Marvin v. Housing Authority of Jacksonville, 133 Fla 590, 183 So 145; Thomas v. Housing & Redevelopment Authority, 234 Minn 221, 48 NW2d 175; New York City Housing Authority v. Muller, 270 NY 333, 1 NE2d 153, 105 ALR 905; Blakemore v. Cincinnati Metropolitan Housing Authority, 74 Ohio App 5, 57 NE2d 397; Nashville

Housing Authority v. City of Nashville, 192 Tenn 103, 237 SW2d 946.

Since the purpose for which the housing authorities would take property by right of eminent domain is public it follows that the provisions of the State Act, Sec 23-1111 (14) and Sec 23-1117, giving the authorities such power is not contrary to Article I, Sec 14 of the state constitution nor the 14th amendment of the U. S. Constitution. See Thomas v. Housing & Redevelopment Authority, 234 Minn 221, 48 NW2d 175.

The plaintiff complains that the condemnation of land for new housing outside the slum area as in the instant case could not be held to be for a public purpose and therefore violates said sections of the State and Federal Constitutions. If that were so, the purpose of the Act would in many instances be thwarted. There may be many reasons why the new project should not be built in the slum area, such as the topography, drainage and lack of space. In the case of Chapman v. Huntington Housing Authority, 121 W Va 319, 3 SE2d 502, the court says:

"The projects may be built in any area within the exercise of sound discretion of the federal and state authorities and the council of the City of Huntington, whether slum or not slum. They are simply low-cost-housing projects, incidental to slum clearance. In some cities it is quite conceivable that slums exist in low-water areas. Equally, it is quite inconceivable that public moneys in large amounts should be expended to build modern dwelling units where they will be subject to and endangered by rising waters."

In Riggin v. Dockweiler, 15 Cal2d 651, 104 P2d 367, the court said:

"In working out the problem of low-cost housing, it may appear that the clearance of a slum area is desirable because the dwellings in use are insanitary, or present fire hazards or are maintained under such conditions that their removal would be in the interest of the public welfare. Also, the location may be an undesirable one for dwellings. Where such circumstances exist, it would be folly to require the new buildings to be constructed at the old location, and compel the new units to be crowded into the space taken up by those cleared away. Such

an interpretation of the housing act would thwart the very purposes for which it was passed and effectively block dam clearance in districts where the problem is most acute." See also Thomas v. Housing & Redevelopment Authority, 234 Minn 221, 48 NW 2d 175, 188; Keyes v. United States, 73 App DC 273, 119 F2d 444, 314 US 636, 86 L ed 510, 62 S Ct 70.

Plaintiff also claims the housing proposed will be in competition with his rental properties in the neighborhood and in that manner deprive him of income and property without due process of law contrary to the 14th amendment of the United States Constitution. There is no merit to the contention. It has been held that governmental competition with owners of private business does not constitute legal damage even though it may injure their business. Neither the Federal nor State Constitution grants any right to plaintiff to be free from competition. Woodworth v. Gallman, 195 SC 157, 10 SE2d 316, 321; Alabama Power Co. v. Ickes, 302 US 464, 82 L ed 374, 58 S Ct 300; Tennessee Electric Power Co. v. T.V.A., 306 US 118, 83 L ed 543, 59 S Ct 366; Spahn v. Stewart, 268 Ky 97, 103 SW2d 651.

Plaintiff contends that the act delegates legislative power to the Housing Authority contrary to Article II, Sec 25 of the constitution. This court has repeatedly held that the legislative power cannot be delegated. State ex rel. Rusk v. Budge, 14 ND 532, 105 NW 724; State ex rel. City of Fargo v. Wetz, 40 ND 299, 168 NW 835, 5 ALR 731. It must clearly appear, however, that the power attempted to be delegated is legislative. Wilder v. Murphy, 56 ND 436, 440, 218 NW 156, and cases cited. However, the determination of the facts upon which the law becomes operative may be delegated.

"The legislature . . . may confer discretion in the administration of the law, and the constitution has never been regarded as denying to the legislature the necessary resources of flexibility and practicality which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply, and the legislature may make a law to delegate a power to determine

some fact or state of things upon which the law makes or intends to make its own action depend. The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law; the first cannot be done, to the latter no valid objection can be made. 16 CJS, Constitutional Law, Sec 133, pages 340–341.

In a very thorough discussion of this subject in Picton v. County of Cass, 13 ND 242, 100 NW 711, 3 Ann Cas 345, Judge Young quotes with approval from Locke's Appeal, 72 Pa 491, 13 Am Rep 716, as follows:

"The Legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the law-making power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

In the case of Enderson v. Hildenbrand, 52 ND 533, 204 NW 356, involving the finding by a city council of the facts required for the exclusion of farm land from a city, this court said:

"The legislature has prescribed certain general, definite rules applicable in all cases as to what territory is to be excluded from cities; and authorized the city council (or commission) to ascertain and determine in each case whether it does or does not fall within the rule established by the legislature. This does not constitute a delegation of legislative powers in contravention of the constitutional inhibition. 6 RCL pp 175, 176. For it is competent for the legislature to pass a law, the ultimate operation of which may, by its own terms, be made to depend on a contingency." (Cases cited.)

In the case of Housing Authority v. Dockweiler, 14 Cal2d 437, 94 P2d 794, the court in passing on a housing authority law almost identical with the North Dakota act, says:

"The standards specified in the act are sufficiently definite. . . . The statute is complete in itself. While the legislature

cannot delegate the power to make a law, it cannot now be seriously disputed that it may delegate to administrative boards and agencies the power and authority of ascertaining and determining the facts upon which the laws are to be applied and enforced." See also Chapman v. Huntington Housing Authority, 121 W Va 319, 3 SE2d 502.

An anlysis of the State Act shows that it creates a housing authority but leaves to the local authorities the finding of the facts upon which the law can be activated. It makes provisions for the organization of the housing authority and defines its powers. It provides that in the operation and management of the housing projects no profit shall be made and that the rentals be kept as low as possible consistent with safe and sanitary dwellings. The authority shall select as tenants persons of low income but with ability to pay the rentals fixed, and definite rules for fixing the rentals, Sec 23–1113 NDRC 1943, and for the selection of tenants, Sec 23–1114 NDRC 1943, are laid down. The law provides adequate guides for its administration but delegates no legislative power to local authorities. See Anderson v. Peterson, 78 ND 949, 54 NW2d 542.

It is next claimed that these provisions for the administration of the Act grant special privileges to a limited class, violating Article I, Sec 20 of the Constitution, which provides:

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

This constitutional provision does not prohibit appropriate legislative classification where proper facts justify such action as long as the act applies uniformly to all those within the class under similar circumstances. Any classification is permissible which has a reasonable relation to some permitted end of governmental action. Thomas v. Housing & Redevelopment Authority, 234 Minn 221, 48 NW2d 175, 189, and cases cited. Ability to pay appears to the courts to be proper consideration to justify classification. Reed v. Bjornson, 191 Minn 254, 253 NW 102, 108.

In the case of Vermont Loan & Trust Co. v. Whithed, 2 ND 82, 94, 49 NW 318, this court said:

"The legislature has power to classify persons and subjects for the purpose of legislation, and to enact laws applying specially to such classes, and, while the laws thus enacted operate uniformly upon all members of the class, they are not vulnerable to the constitutional inhibition under consideration. But this power of the legislature is circumscribed. It is not an arbitrary power waiting the whim of the legislature. Its exercise must always be within the limits of reason, and of a necessity more or less pronounced. Classification must be based upon such differences in situation, constitution or purposes, between the persons or things included in the class and those excluded therefrom, as fairly and naturally suggest the propriety of and necessity for different or exclusive legislation in the line of the statute in which the classification appears." See also State ex rel. Amerland v. Hagan, 44 ND 306, 175 NW 372; Klein v. Hutton, 49 ND 248, 191 NW 485.

In the case of Housing Authority v. Higginbotham, 135 Texas 158, 143 SW2d 79, 130 ALR 1053, the Texas Court, having a housing law similar to ours under consideration, says on this subject:

"The Legislature in the instant law under attack has made no attempt to grant special privileges to any man or set of men, but has made a reasonable classification of the members of the public and has provided that such low rent dwelling accommodations shall be available to all members of the public who presently or in the future fall within the classification made by the Legisature. Such class legislation has been uniformly upheld in this State, provided there is any reasonable basis which would justify the classification." (Cases cited.)

In Williamson v. Housing Authority, 186 Ga 673, 199 SE 43, 47, the court said:

"The argument is that the actual benefits to be derived from the proposed slum-clearance and low-cost housing project are limited to those individuals or families 'who lack the amount of income which is necessary to enable them, without financial assistance, to live in safe and sanitary dwellings without over-

crowding,' and that thus the housing act provides special privileges and advantages for a particular group to be selected from persons occupying a certain economic and financial status, to the exclusion of other citizens who by arbitrary standards occupy a different situation. It might also be claimed that the actual benefits derived from maintaining the . . . Academy for the Blind are limited to blind children; or that the actual benefits of the . . . State Sanitarium are limited to those mentally diseased; or that adults are denied the actual benefits of the public-school system because the schools are maintained only for children between certain ages; and that therefore, since they provide privileges and advantages only for a particular group, their maintenance by the State is contrary to our organic law. It is no violation of the constitutional guaranty here invoked for the State to provide direct benefits for a certain group, to the exclusion of other citizens, unless done by arbitrary standards. The governing authorities were well justified in limiting to those of modern income the benefits of the legislation under discussion. The statute makes a classification and states the basis thereof, which can not be said by this court to be unreasonable."

· The State Act is enacted for the benefit of people of low income. It prescribes rules for determining the limit of income under which the benefits are available. The benefits of the act are open to all people under that limit. The act grants no privileges to a favored few. All persons similarly situated are given the same opportunity under the State Act to the extent of the facilities provided. See also Fradet v. City of Southwest Fargo, post, 799, 59 NW2d 871, currently decided.

It is next contended by the plaintiff that the State Act is a special law in contravention of the Constitution, Article II, Sec 69 (33), which provides that the legislature shall pass no special law for the "incorporation of cities, towns or villages, or changing or amending the charter of any town, city or village."

The State Act creates in each city of more than 5000 population and in each county of the state a public body corporate and politic to be known as the Housing Authority. Under the law such Housing Authority exists in every such city and every

county by the legislative mandate and is available whenever the local authorities find the facts necessary for its activation.

This court in Vermont Loan & Trust Co. v. Whithed, 2 ND 82, 49 NW 318, has pointed out the distinction between a general and a special law as follows:

" 'A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special.' . . . 'Special laws are those made for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances.' . . . A 'general law,' as the term is used in this constitutional provision, is a public law of universal interest to the people of the state, and embracing within its provisions all the citizens of the state, or all of a certain class or classes of citizens. It must relate to persons and things as a class, and not to particular persons or things of a class. It must embrace the whole subject, or a whole class, and must not be restricted to any particular locality within the state. . . . The uniform operation required by this provision does not mean universal operation. A general law may be constitutional, and yet operate in fact only upon a very limited number of persons or things, or within a limited territory. But, so far as it is operative, its burdens and benefits must bear alike upon all persons and things upon which it does operate, and the statute must contain no provision that would exclude or impede this uniform operation upon all citizens, or all subjects and places, within the state, provided they were brought within the relations and circumstances specified in the act."

Certainly the Housing Act operates alike on all places and persons that come within its provisions and is not a special law. 2 Sutherland, Statutory Construction, 5. See Humphrey v. City of Phoenix, 55 Ariz 374, 102 P2d 82; Williamson v. Housing Authority, 186 Ga 673, 199 SE 43; Krause v. Peoria Housing Authority, 370 Ill 356, 19 NE2d 193; Spahn v. Stewart, 268 Ky 97, 103 SE2d 651; In re Brewster Street Housing Site, 291 Mich 313, 289 NW 493; Rutherford v. Great Falls, 107 Mont 512, 86 P2d 656; New York City Housing Authority v. Muller, 270 NY 333, 1 NE2d 153, 105 ALR 905; Dorman v. Philadelphia Hous-

ing Authority, 331 Pa 209, 200 Atl 834; Housing Authority v. Higginbotham, 135 Tex 158, 143 SW2d 79 and 95.

Plaintiff further contends that the State Act in establishing a "public body corporate and politic" empowered to exercise public essential governmental functions is in violation of Article VI, Sec 130 of the Constitution, which provides:

"The legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law."

Under this section of the Constitution the legislature provides for the organization of municipal corporations and fixes their powers. There is nothing in the wording of this section of the constitution restricting the legislature in the exercise of that duty. It may limit such powers or withdraw any power vested in the municipality and place it with another public agency if it so desires. It may provide that two such agencies carry out the same powers in conjunction. People ex rel. Tuohy v. City of Chicago, 399 Ill 551, 78 NE2d 285. In Monaghan v. Armatage, 218 Minn 108, 112, 15 NW2d 241, 243, the court said:

"A municipality is merely a department of the state, a political subdivision created as a convenient agency for the exercise of such governmental powers as may be entrusted to it. City of Trenton v. New Jersey, 262 US 182, 43 S Ct 534, 67 L Ed 937, 29 ALR 1471. Absent constitutional restriction, the legislature may at its pleasure modify or withdraw any powers so entrusted to a city, hold such powers itself, or vest them in other agencies. Hunter v. City of Pittsburgh, 207 US 161, 178, 179, 28 S Ct 40, 46, 52 L Ed 151, 159, . . . ."

This is cited with approval in the case of Thomas v. Housing & Redevelopment Authority, 234 Minn 221, 48 NW2d 175. The housing authority is activated by action of the municipal authority to carry on specific public projects in cooperation with the municipal authority. There is no conflict between them nor any conflict with the constitution.

Plaintiff claims the State Act violates Article XI, Sec 178 of the Constitution of North Dakota, which provides: "The power of taxation shall never be surrendered or suspended by any grant or contract to which the state or any county or other municipal corporation shall be a party," and Article II, Sec 69, which provides: "The legislative assembly shall not pass local or special laws . . . (29) Exempting property from taxation," and finally, Article XI, Sec 176, which requires that "Taxes shall be uniform upon the same class of property . . . ."

Plaintiff bases all these objections on the grounds that the purposes of the housing act are private rather than public and that all the property of the Housing Authority is private property. We have found to the contrary so that his argument fails.

The Housing Authority is created "a public body corporate and politic." Sec 23–1102 NDRC 1943. It is a public corporation for public purposes. Article XI, Sec 176 of the State Constitution provides, in part:

"The property of the United States and of the state, county and municipal corporations and property used exclusively for schools, religious, cemetery, charitable or *other public* purposes shall be exempt from taxation." (Emphasis added.)

Sec 57–0208 (3) NDRC 1943 provides:

"All property, real or personal, belonging to any county, city, village, park district, township, school district, or to any other municipal corporation" shall be exempt from taxation.

Sec 23–1129 NDRC 1943 provides:

"The property of an authority is declared to be public property used for essential public and governmental purposes and shall be exempt from all taxes and special assessments of the city, the county, the state or any political subdivision thereof. . . ."

It is clear that the legislative intent is that any property held by a housing authority, a public corporation, for public purposes shall be exempt from taxation. The constitutional and legislative declarations are definite that property held exclusively for "public purposes" shall be exempt from taxation. State ex rel. Linde v. Packard, 35 ND 298, 317, 160 NW 150, LRA1917B 710.

In Housing Authority v. Dockweiler, 14 Cal2d 437, 453, 94 P2d 794, 802, the court says:

"Section 4 of the Housing Authorities Law, . . . defines an authority as 'a public body, corporate and politic.' Such an authority is not unlike an irrigation district which, though held not to be a muncipal corporation within the meaning of the quoted constitutional provision, has been held to be a public corporation for municipal purposes whose property is exempt from taxation. (Turlock Irrig. Dist. v. White, 186 Cal 183, 198 P 1060, 17 ALR 72; Anderson-Cottonwood Irrig. Dist. v. Klukkert, 13 Cal2d 191, 88 Pac2d 685.) Similarly reclamation districts have been declared to be public agencies whose properties are likewise exempt from taxation. (Reclamation Dist. v. County of Sacramento, 134 Cal 477, 66 Pac 668.) In Laguna Beach Water Dist. v. Orange Co., 30 Cal App2d 740, 87 Pac2d 46, 47, it is stated that 'It must be conceded that it has always been the policy of the law in California since the adoption of the present Constitution, to exempt from taxation property of the state and state agencies generally classified as public corporations.' Moreover, while provisions exempting private property from taxation are to be strictly construed, the rule is otherwise as to public property which is to be taxed only if there is express authority therefor. (Pasadena v. County of Los Angeles, 182 Cal 171, 174, 187 Pac 418.)"

Plaintiff argues that paying ten per cent of the shelter rents to the local government is an invalid attempt to compromise taxes for an amount less than the full taxes, in violation of the constitutional requirement that "taxes shall be uniform," and also an attempted suspension of the power of taxation, in violation of Article XI, Sec 176 of the State Constitution. These contentions are pyramided upon prior contentions that the purpose is not public and that the tax exemption is invalid. Since both those points have been denied against the plaintiff, there is no base upon which to uphold this contention. The property of the Housing Authority is expressly exempted from taxation. Hence, there can be no question of the surrender or suspension of the power to tax on the part of the City. Furthermore, the payment of a percentage of the shelter rents has no bearing, either ex-

790

pressly or by implication, on the subject of tax exemption of property of the Authority. The payment of a percentage of the shelter rents to the municipality is merely reimbursement for the services which the municipality must necessarily render to the project. See Thomas v. Housing & Redevelopment Authority, 234 Minn 221, 48 NW2d 175; McNulty v. Owens, 188 SC 377, 199 SE 425.

In Belovsky v. Redevelopment Authority, 357 Pa 329, 54 A 2d 277, it is said:

"The provision of the Redevelopment Cooperation Law that any city, borough, town, township or county may contract with a Redevelopment Authority with respect to any sums which the Authority may agree to pay for special improvements, services and facilities to be provided by such city, borough, town, township or county for the benefit of the redevelopment, does not, either expressly or impliedly, have any bearing on, or relation to, the subject of tax exemption of property within the redevelopment area."

Plaintiff then attacks the provision that no lien shall attach to the project or its assets upon failure to make the agreed payment.

Since the housing authority is a public body, its officers are public officers. This court will not assume that public officers will not do their duty, such as refusing to make payment for services. Furthermore, should the housing authority's officers fail or refuse to make the agreed payments, they could be compelled to do so through mandamus, or mandatory injunction buttressed by contempt proceedings. A lien cannot attach to housing authority property any more than it could to any other public property.

Since the purpose is public, and the property publicly owned, there is no ground for the argument made by plaintiff that the Housing Act results in taking property off the tax rolls. Cox v. City of Kinston, 217 NC 391, 8 SE2d 252, 257. On the other hand, it is contended that the removal of the slum area and its contaminating effects will cause a rise in property values and tax income at all levels of government.

Although he did not seriously urge it on appeal, plaintiff al-

leged in his complaint that the housing authority bonds would constitute debts of the county in excess of the constitutional limitation in Article XII, Sec 183, and would also contravene the prohibition in the same section against increasing the bonded indebtedness of the county without a majority vote, to acquire a "revenue producing utility." Sec 23–1120, NDRC 1943, expressly provides three alternative methods by which the housing authority can pay off the bonds and interest thereon, and then unequivocally and explicitly states that "The bonds and other obligations of the authority shall not be payable out of any funds or properties other than those of the authority." By the terms of this statute no liability for the project can be imposed upon the county or city. Redmon v. Chacey, 7 ND 231, 73 NW 1081. In jurisdictions having substantially the same constitutional provisions and housing-slum clearance statutes as in the case at bar, it has been held unanimously that the bonds of housing authorities do not constitute an indebtedness of the local government within the meaning of the Constitution. With these we are in full agreement.

Furthermore, plaintiff alleges that the city is pledging its credit in support of the housing project contrary to Article XII, Sec 185 of the State Constitution, which provides that " . . . neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, . . ." The housing project is financed by federal government aid and by the issue of bonds for neither of which the city's credit is pledged, nor is the city in any way liable. Redmon v. Chacey, supra; Rutherford v. City of Great Falls, 107 Mont 512, 86 P2d 656; Dornan v. Philadelphia Housing Authority, 331 Pa 209, 200 Atl 834; State ex rel. Porterie v. Housing Authority of New Orleans, 190 La 710, 182 So 725; Marvin v. Housing Authority of Jacksonville, 133 Fla 590, 183 So 145; McNulty v. Owens, 188 SC 377, 199 SE 425; Williamson v. Housing Authority of Augusta, 186 Ga 673, 199 SE 43; Housing Authority v. Dockweiler, 14 Cal2d 437, 94 P2d 794; Edwards v. Housing Authority of Muncie, 215 Ind 330, 19 NE2d 741; Krause v. Peoria Housing Authority, 370 Ill 356, 19 NE2d 193;

Belovsky v. Redevelopment Authority, 357 Pa 329, 54 Atl2d 277; Humphrey v. City of Phoenix, 55 Ariz 374, 102 P2d 82; McLaughlin v. Housing Authority of Las Vegas, 68 Nev 84, 227 P2d 206; Mumpower v. Housing Authority of Bristol, 176 Va 426, 11 SE2d 732, and others.

Plaintiff also contends that the State Act violates Article IV, Sec 85, of the Constitution providing that the judicial power shall be vested in the courts and Article I, Sec 22, providing the courts shall be open and every man for any injury done him shall have a remedy by due process of law. In support of that he cites Sec 23–1104 NDRC 1943 providing that in any proceeding involving the validity or enforcement of any contract of the authority, "the authority shall be conclusively deemed to have become established and authorized to transact business and exercise its powers hereunder upon proof of the adoption of a resolution by the governing body of the city or county declaring the need for authority." This provision he claims gives the city or county board judicial power and shuts anyone questioning the organization of the authority out of court.

The legislature determined by Sec 23–1103 NDRC 1943 the method of activating the housing authority created by Sec 23–1102 NDRC 1943. It delegated to the governing body of a city or county the finding of the facts necessary for the activation of the housing authority. That body finds the facts but passes no judgment thereon. It is given no judicial power. Then by Sec 23–1104 NDRC 1943 the legislature declared that, on the proof of the adoption of the resolution containing the finding of the facts necessary under Sec 23–1103 NDRC 1943 for the activation of the authority, the authority shall be conclusively deemed to have been established and authorized to transact business. The legislature declared that the proof of the resolution conclusively presumed that the necessary facts were found by the governing body.

Generally the legislature alone determines the facts upon which legislation is passed. The mere passing of the legislation is taken as the proof of such finding. Usually the presumption of the correctness of such facts is regarded as conclusive unless

an abuse of discretion is shown. In 11 Am Jur, Constitutional Law, Sec 142, p 820, it is said:

"As a general rule it may be stated that the determination of facts required for the proper enactment of statutes is for the legislature alone, that the presumption as to the correctness of its findings is usually regarded as conclusive unless an abuse of discretion can be shown, and that the courts do not generally have jurisdiction or power to reopen the question or make new findings of fact." See also State ex rel. Sullivan v. Dammann, 227 Wis 72, 277 NW 687; Ex parte Yun Quong, 159 Cal 508, 114 P 835, Ann Cases 1912 C 969.

In the instant case the legislature made a determination of the existence of slum conditions in this state when it passed the Housing Authorities Act. It had the power to make that finding conclusive for every authority established. Instead it delegated to the city or county authorities, who may be presumed to have better knowledge thereof, the final finding of the facts in each locality and made their findings conclusive. It had the authority to do that. The findings so made cannot, under the circumstances shown in this case, be questioned in the courts. This provision in the law is not violative of Article IV, Sec 85 or Article I, Sec 22 of the State Constitution.

In the case of Cox v. City of Kinston, 217 NC 391, 8 SE2d 252, 257, the court had for consideration a similar feature of the law creating the North Carolina Housing Authority. The court came to the same conclusion as we have, although for somewhat different reasons. The court said:

"The statute provides: 'In any suit, action or proceeding involving the validity or enforcement of or relating to any contract of the Authority, the Authority shall be conclusively deemed to have been established in accordance with the provisions of this article upon proof of the issuance of the aforesaid certificate by the Secretary of State.' We regard this as a perfectly legitimate provision, and similar provisions for the purpose of quieting litigation have often been sustained by the Court. It does not assume judicial power by preventing or curtailing its exercise by the courts. It simply bars an attack on the procedure after a certificate of incorporation has been obtained from the Secre-

tary of State. . . . It was, therefore, competent to cure unessential defects in the procedure which the law-making body might have seen fit to omit imprimis."

A similar rule was followed in the cases of Woodworth v. Gallman, 195 SC 157, 10 SE2d 316, and Knoxville Housing Authority v. City of Knoxville, 174 Tenn 76, 123 SW2d 1085.

The plaintiff claims that the title to the Housing Authorities Act as enacted in Chapter 102 SL 1937 violates Article 2, Sec 61 of the constitution which provides that: "No bill shall embrace more than one subject, which shall be expressed in its title, . . ." His contention is that the provision of the state act conferring upon the housing authorities the power of eminent domain is not expressed in the title of the said act.

On examining the title of the original act, Chapter 102 SL 1937 we find that the purpose expressed in the title is the creation of housing authorities, defining their powers and providing for the exercise of such powers "including acquiring property." Eminent domain is certainly germane to the acquiring of property and is, therefore, within the title according to the decisions of this court. See State ex rel. Weeks v. Olson, 65 ND 407, 259 NW 83; State ex rel. Gammons v. Shafer, 63 ND 128, 246 NW 874; Thompson Yards v. Kingsley, 54 ND 49, 208 NW 949; State ex rel. Kol v. North Dakota Children's Home Society, 10 ND 493, 88 NW 273.

In this case, however, the question raised becomes immaterial because the original act, Chapter 102 SL 1937, together with its title was repealed by the enactment of the North Dakota Revised Code 1943, Sec 1-0219. In the Code that chapter was re-enacted as Chapter 23-11 under the proper title for the whole code. We have held that a statute, even if it fails to comply with the provision of Sec 61 of the Constitution becomes valid upon its incorporation in the North Dakota Revised Code duly adopted as such. Lapland v. Stearns, ante, 62, 54 NW2d 748; 59 CJ Statutes, Sec 376 p 799; J. P. Schaller Co. v. Canistota Grain Co., 32 SD 15, 141 NW 993.

"Where a section of a legislative act has been incorporated in the Revised Codes and adopted as a part of the complete statutes of the state, the court will not inquire into or consider the

sufficiency of the original title of the act in which such section was originally adopted by the Legislature. In such case, it is too late to raise the sufficiency of the title to the original act, which was adopted prior to the date of its incorporation and adoption in the Revised Codes of the state." Anderson v: Great Northern Railway Co., 25 Idaho 433, 138 P 127, 128, Ann Cas 1916C 191.

Plaintiff contends that the housing authorities act grants special privileges. It was enacted in 1937 as an emergency measure. Therefore plaintiff claims that the act violates Article II, Sec 67 of the constitution which provides that no act of the legislative assembly shall take effect until July 1st after the close of the session unless the legislature by a two-thirds vote shall declare an emergency and then continues: "Provided, however, that no act granting a franchise or special privilege, or creating an invested right or one other than in the state, shall be declared an emergency measure."

That section of the constitution relates only to the time when an act goes into effect. Even if that emergency clause is attached to a law granting special privilege that does not affect the act but only the validity of the emergency clause. As the time has long passed for the act to go into effect without the emergency clause the question of the validity of the emergency clause is not in issue here. Strange v. Levy, 134 Md 645, 107 Atl 549; Dinneen v. Rider, 152 Md 343, 136 Atl 754; State ex rel. Pierce v. Coos County, 115 Ore 300, 237 P 678.

Furthermore, we have held that the state housing authorities act is not legislation granting any special privilege so that the emergency clause cannot effect it anyhow. There is no conflict with Article II, Sec 67 of the constitution.

It is finally claimed that there is no specific provision in the state housing act granting authority to the city to cooperate with the housing authority and that, therefore the cooperative agreement is beyond the power of the city and void.

In the original housing authority law, Chapter 102 SL 1937 there is no specific provision for the cooperation of the city with the authority. Such cooperation, however, is implied and certainly can be exercised in as far as the general powers granted

the city cover the matters upon which cooperation is desired. That the legislature so intended is shown by the amendments to the original housing authority act when it was extended to cover the building of sanitary dwellings for persons engaged in national defense and veterans of World Wars I and II. Chapter 217 SL 1941 (Now Sec 23–1133, NDRC 1949 Suppl) and Chapter 191 SL 1949. Those amendments granted the *same right and power* to the city, county or other public body to cooperate with the housing authority *which they had for the purpose of assisting the development or administration of slum clearance or housing projects.* Sec 23–1133 1949 Supplement and Chapter 191 SL 1949. See Fradet v. The City of Southwest Fargo, post, 799, 59 NW2d 871 currently decided.

Sec 40–0501 NDRC 1943, provides that the governing body of the municipality shall have the following amongst other powers:

(8) To lay out, establish, open, alter, repair, clean, widen, vacate, grade, pave, park or otherwise improve and regulate the use of streets, alleys, avenues, sidewalks, crossings and public grounds, . . . and

(35) To prevent and provide for remedying any dangerous construction or condition of any building, inclosure, manufactory creating a fire hazard; to prevent a deposit of ashes or refuse in unsafe places; and to require all buildings and places to be put and kept in a safe condition.

(44) To declare what shall constitute a nuisance and to prevent, abate and remove the same.

(45) To make regulations necessary or expedient for the promotion of health or for suppression of disease.

(59) To accept aid from, cooperate and contract with, and to comply with and meet the requirements of any federal or state agency for the establishment, construction and maintenance of public works . . . and in furtherance thereof to acquire by purchase, lease, gift or condemnation the necessary lands, rights-of-way and easements for such projects, and to transfer and convey to the state or federal government or any agency thereof such lands, rights-of-way and easements in consideration of the establishment and construction of, and the public benefits

which will be derived from any such project. (Chapter 284 SL 1947.)

Cities shall have the additional powers:

(13) To Adopt a Zoning Ordinance . . . .

40-4701 NDRC 1943. For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing body of any city may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes. Such regulations may provide that a board of adjustment may determine and vary the application of the regulations in harmony with their general purpose and intent and in accordance with general or specific rules therein contained.

Sec 40-0501 NDRC 1949 Suppl 1. Ordinance. To enact or adopt all such ordinances, resolutions, not repugnant to the constitution and laws of this state, as may be proper and necessary to carry into effect the powers granted to such municipality or as the general welfare of the municipality may require, and to repeal, alter, or amend the same. The governing body of a municipality may adopt by ordinance the conditions, provisions, and terms of a building code, a fire prevention code, a plumbing code, an electrical code, a sanitary code, or any other standard code which contains rules and regulations printed as a code in book or pamphlet form by reference to such code or portions thereof alone without setting forth in said ordinance the conditions, provisions, limitations and terms of such code. . . .

In connection with the objection to the cooperation agreement plaintiff first raises the question of the authority of the city to agree that it will not tax the property of the housing authority. That, however, is merely in accordance with the law. We have found that property of the authority is not subject to taxation.

The plaintiff then claims that the agreement violates Article 12, Sec 185 of the state constitution prohibiting the extension of credit or making donations in aid of any individual, association

or corporation. That is without merit since the local housing authority is a public corporation engaged in public work.

The plaintiff then objects to the provision that the city agrees to "vacate such streets, roads and alleys within the area of such project as may be necessary in the development thereof and convey without charge to local authority such interest as the municipality may have in such vacated areas." The authority for that, however, is provided in Section 40–0501, (8) and (59).

The North Dakota Housing Authorities Law is constitutional. A city can enter into a cooperation agreement with a housing authority on matters which are within the general powers granted the city.

We have considered all of the objections to the cooperative agreement presented by the plaintiff. None of them are well taken. The plaintiff has failed to present any valid challenge to that agreement in this case. Other challenges have been considered and held to invalidate portions of the agreement in Fradet v. City of Southwest Fargo, currently decided. The plaintiff not being entitled to prevail on any points presented in this case, the judgment appealed from, in so far as it holds that the North Dakota Housing Authorities Law is constitutional and denies the plaintiff injunctive relief is affirmed.

Morris, C. J., and Christianson, Sathre and Burke, JJ., concur.